**Kelly John FROST, petitioner, Appellant,**

v.

**The COMMISSIONER OF PUBLIC SAFETY FOR the STATE OF MINNESOTA, Respondent.**

**No. C3-83-1500.**

Court of Appeals of Minnesota.

May 15, 1984.

Mark Alexis Masica, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by SEDG-WICK, P.J., PARKER and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal from an implied consent order sustaining revocation of appellant's driving privileges for 90 days. We affirm.

## FACTS

Officer David Thompson, Plymouth Police Department, pulled defendant over after clocking him on radar speeding. Officer Thompson detected alcohol on defendant Kelly Frost's breath and asked him to perform field sobriety tests. He then administered a preliminary screening test, using an instrument calibrated to read "fail" at an alcohol concentration of .11 or more. Defendant obtained a "fail" reading. A second test administered after defendant spit out tobacco he had been chewing also resulted in a fail reading.

Officer Thompson contacted defendant's father, an attorney, who advised his son to take the breath test. He also advised Officer Thompson that he wanted his son to have an independent blood-alcohol test administered.

Defendant was taken to the Plymouth police station, read the implied consent advisory, and took the breath test. His reading was .12.

Defendant's father called a doctor from home to arrange a supplemental blood test. He did not finalize arrangements with the doctor because he was not certain where the test should be taken.

He then went to the Plymouth police station. After waiting for about a half hour he was allowed to use a phone to call the doctor. He asked Officer Thompson to talk to the doctor to finalize the arrangements, but the officer refused. Defendant's father never actually asked the doctor to come to the police station.

Officer Thompson told defendant and his father that he was not going to wait around for a doctor to come to the station and if they wished to have additional tests taken they should get the tests taken after leaving the station.

Upon defendant's release from custody, he did not have additional tests made, because his father believed that any test taken away from the police station would have no value. Defendant's driving privileges were revoked. He appeals raising the following issue.

## ISSUE

Does the evidence show that the peace officer denied or prevented defendant from obtaining an independent blood-alcohol test?

## ANALYSIS

■ The trial court, sitting without a jury, found that Officer Thompson did not prevent appellant from obtaining an independent test of his blood by a person of his own choosing. In the absence of a jury, due regard will be given to the trial court's opportunity to judge the credibility of the witnesses, and findings of fact will not be set aside unless *clearly erroneous. Bergstedt, Wahlberg, Berquist Assoc. v. Rothchild,* 302 Minn. 476, 225 N.W.2d 261 (1975).

Appellant claims the officer prevented a second test by refusing to assist appellant in obtaining one. Minn.Stat. § 169.123, subd. 3 (1983), in relevant part provides:

The person tested has the right to have a person of his own choosing administer a chemical test or tests in addition to any administered at the direction of the peace officer; *provided,* that the *additional test* specimen on behalf *of* the *person is obtained* at the place *where the person is in custody,* after the test administered at the direction of a peace officer, and at no expense to the state. (emphasis added).

■ The only obligation an officer has in assisting the defendant in obtaining an additional test is to allow defendant use of a phone. *State v. Streitz,* 276 Minn. 242, 150 N.W.2d 33 (1967). Here, this duty was

clearly met. The fact that the officer refused to talk to the doctor on the phone is of no consequence. The officer had no duty to do this.

The fact that defendant did not obtain an additional test upon his release because he relied upon his father's belief that the tests would be of no evidentiary value is also of no consequence. An officer has no duty to continue to hold a person in custody until additional tests can be administered. Once released, a person can obtain any kind of test desired, anywhere he chooses. The test must meet the usual evidentiary standards to be admitted into evidence.

Minn.Stat. § 169.123, subd. 3 (1982), is nothing more than an *affirmation* of the right of persons *being held in custody* to have an independent test administered while being held. In other words, the statute does not restrict the manner in which a driver, once released, obtains independent scientific tests.

Minn.Stat. § 169.123, subd. 3, in relevant part provides:

> The failure or inability to obtain an additional test or tests by a person *shall not preclude* the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer. (emphasis added).

Since defendant was not prevented or denied the opportunity to obtain additional tests, the result of the breath test administered by the officer was properly admitted into evidence.

## DECISION

We affirm the trial court's decision revoking defendant's driving privileges.