**Joel Allyn MONTPETIT, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C3–86–362.**

Court of Appeals of Minnesota.

Aug. 26, 1986.

Samuel A. McCloud, Dean Grau, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and LANSING, JJ.

## OPINION

RANDALL, Presiding Judge.

Respondent's driving privileges were revoked pursuant to the implied consent law when he failed a breath test. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner filed a motion for a new trial, or to reopen its case; the trial court denied the motion and the Commissioner filed this appeal. We affirm.

## FACTS

On May 18, 1985, respondent Joel Allyn Montpetit was stopped for speeding and arrested by State Trooper Jay Swanson (Swanson). His license was revoked for failing the breath test, and he petitioned for judicial review.

At the implied consent hearing, Swanson testified that he pulled respondent over for speeding at approximately 3:08 a.m. on May 18, 1985, noticed indicia of intoxication, and arrested respondent for driving while under the influence. He read respondent the implied consent advisory on May 18, 1985, and offered him a test. Exhibit 2, a xeroxed copy of the Intoxilyzer test record, was introduced into evidence. Swanson identified his handwriting and initials which appeared on the form. He had the opinion that the Intoxilyzer was in good working order the evening he performed the test.

Swanson did not know who made the copy which was introduced into evidence. He agreed that he had to refresh his memory from the exhibit, although he recalled the general situation.

The Commissioner rested. Respondent immediately made a motion to rescind the revocation because the test record was dated *May 17*, 1985, and the officer testified that he arrested respondent on May 18, that the test was given on May 18, and no claim was made by the Commissioner that respondent was tested on May 17. Respondent argued that the Commissioner failed to prove that respondent took a test on May 18 resulting in a reading of over .10.

Based on this discrepancy in dates, the court expressed doubt as to the credibility of the test and ordered respondent's revocation rescinded. The Commissioner then moved the court to allow him to recall Swanson. The Commissioner did not make a specific offer of proof, but indicated generally that Swanson could explain the two different dates. The court denied the request to reopen the Commissioner's case.

The court issued an order rescinding the revocation. It found that the copy of the test record introduced into the record was dated May 17, 1985, that Swanson was unable to identify the copy introduced as having been made by himself, and that respondent's arrest and test occurred on May 18, 1985.

It found that Swanson had no independent recollection of the Intoxilyzer test or the result of the test allegedly administered to respondent on May 18, 1985, and that the test record introduced in support of the revocation was dated May 17, 1985, one day before the date of the arrest upon which the revocation was based. It found that the test record introduced by the Commissioner as Exhibit 2 in support of the revocation was not the test record from any test that may have been given to respondent following his arrest on May 18. The trial court concluded that the Commissioner failed to establish that respondent took an Intoxilyzer test on May 18, 1985, which resulted in a reading of .10 or more as required by Minn.Stat. § 169.123.

Later the Commissioner moved for a new trial. After a hearing, the trial court denied the motion. The Commissioner appeals.

## ISSUES

1. Did the trial court abuse its discretion when it denied the Commissioner's motion to reopen the case after he rested?

2. Was the trial court clearly erroneous when it determined the test record introduced by the Commissioner was not the test record from a test given to respondent on May 18, 1985?

## ANALYSIS

### I.

*Motion to reopen*

The Commissioner alleged that the trial court abused its discretion when it failed to allow him to reopen the case after he rested to allow the officer to testify as to the date discrepancy. A decision of whether to allow a party to reopen rests within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion. *Hamilton v. Killian*, 296 Minn. 256, 259–60, 207 N.W.2d 703, 705 (1973). Mere inadvertence is not sufficient to require reopening. *King v. Larson*, 306 Minn. 545, 546, 235 N.W.2d 620, 621 (1975). The Commissioner did not make a formal offer of proof as to the testimony which the officer could provide. The record does not reflect the exact explanation, if any, that the trial court refused to hear, and thus we have none to review. We cannot say, as a matter of law, that the court erred in not allowing the Commissioner to reopen his case.[1]

1. The Commissioner appealed from a trial court order denying a motion for a new trial rather than appealing directly to our court from the trial court's order of recission, which is the appeal route normally taken. Neither party argued or briefed the issue of appealability, and respondent made no motion or argument that the Commissioner's appeal should be dismissed as untimely or improper. However, there is a question as to appealability in these circumstances since the trial court's initial order rescinding the revocation is appealable as a matter of law. Minn.Stat. § 169.123, subd. 7 (1984); *see. Kolb v. City of Minneapolis*, 229 Minn. 483, 488, 40 N.W.2d 619, 621 (1950).

The trial court's decision in an implied consent proceeding is a written order either upholding or rescinding the revocation and is not treated in the same form as civil judgments which are docketed. There is no distinction between what is reviewed at the appellate level on implied consent matters as there is from civil judgments. If one only appeals from a "judgment," the only issue for appellate review is sufficiency of the evidence. A motion for a new trial assigning error is needed with civil judgments before appellate courts will review evidentiary rulings and claimed errors of law occurring during trial. That is not necessary in an im-

## II.

*Burden of proof*

■ The Commissioner also argues that the trial court made errors of law. He argues that the trial court incorrectly relied on the standard used in criminal cases when all evidence is circumstantial. *See State v. Nordstrum,* 385 N.W.2d 348, 350–51 (Minn.Ct.App.1986). The Commissioner argues that the court employed an improper standard when it stated:

> You have introduced a test which shows it was May 17, and the test, at best, is circumstantial evidence, and to be given credibility must lead to only one conclusion, and I can draw a number of separate inferences. Therefore, I am going to grant the motion, and the Commissioner's Order will be rescinded.

We do not agree. We interpret the court to mean that the Commissioner wanted the court to draw the inference that the test dated May 17 was given on May 18, and since the court found that it could draw a number of equal inferences, the court held that the Commissioner had not proved his conclusion by a preponderance of the evidence. We note that in its written order, the court concluded that the Commissioner failed to establish that respondent took an Intoxilyzer test resulting in a reading of

over .10. The court made no reference to the standard of proof beyond a reasonable doubt. We conclude that the court made its decision based on the correct burden of proof in an implied consent case, which is preponderance of the evidence.

The Commissioner also argued that the trial court's order was not justified by the evidence presented at the hearing and is contrary to law.[2] In the absence of a jury, the findings of fact will not be set aside unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. *Id.; Frost v. Commissioner of Public Safety,* 348 N.W.2d 803, 804 (Minn.Ct.App. 1984).

The trial court, in its memorandum denying the motion for the new trial, reaffirmed its decision that the Commissioner failed to establish the elements of his case. It stated:

> In the present case, the [Commissioner] introduced oral and documentary evidence that the arrest and chemical testing of the [respondent] occurred on May 18, 1985. The arresting officer's testimony and [the Commissioner's] Exhibit 1 cite May 18, 1985, as the pertinent date for all purposes.

---

plied consent proceeding, as all issues properly raised in the petition are preserved for appeal on a direct appeal from an implied consent hearing. The Minnesota legislature has established a direct appeal route on implied consent and we do not find it necessary to recommend motions at the trial court level in order to preserve matters for appeal. Motions to the trial court within the normal 30–day appeal time are acceptable as long as the appeal from the judge's order is timely filed. In this case, the notice of the order rescinding the revocation was apparently never served. Since the Commissioner's office thus could bring a timely appeal from the initial rescission order, in the interests of judicial economy we take the case on discretionary review from the Commissioner's appeal from the trial court order denying the motion for a new trial.

**2.** The parties raised the issue of the procedural posture of the case at the time the trial court made its ruling. The Commissioner argues that at the implied consent hearing, following the

conclusion of the Commissioner's case in chief, respondent made a motion in the nature of an involuntary dismissal pursuant to Minn.R.Civ.P. 41.02. Respondent argues that his motion at the conclusion of the Commissioner's case was not a Rule 41 motion, but simply a motion to the court to decide the case in his favor at the conclusion of all the testimony and after both parties rested. Respondent argues that he rested without offering the case in chief and moved the court to decide the case on the merits. The Commissioner argues that it did not appear that way to him at the hearing, and suggests that had respondent's motion to rescind the revocation been denied, that respondent would then have proceeded with his case in chief as is permissible to a party following a Rule 41 motion. The record is unclear as to the exact nomenclature of respondent's motion to dismiss, and it is not necessary to our decision to give it a label. In either event, the standard of review is whether or not the trial court was clearly erroneous and our decision would not change. Minn.R.Civ.P. 52.01.

In contrast, [the Commissioner's] Exhibit 2, the intoxilyzer test record, states a machine-printed date of May 17, 1985. No other evidence of test results was introduced. There is no evidence that [respondent] refused testing.

██ The Commissioner concedes that he has the burden of proving a test with a result of .10 or more alcohol concentration; that respondent could have been tested only on May 18; and that he did not introduce a test record dated May 18. The Commissioner, however, argues that the evidence still supports only one conclusion, that the test record, although misdated, is from the test given respondent on May 18. The trial court did not so find, and in reviewing the totality of the evidence and giving due deference to the trial court on disputed fact issues, we cannot say the trial court clearly erred.

The Commissioner relied on *Johnson v. Commissioner of Public Safety*, 374 N.W.2d 811 (Minn.Ct.App.1985), in which this court determined that the trial court in effect made a permissible finding of fact as to the date on which the arrest occurred, and we found the record sufficient to support the trial court's decision. *Johnson*, 374 N.W.2d at 813. Unlike *Johnson*, here we are required to determine whether the trial court was clearly erroneous in its findings of fact.

The trial court was faced with testimony from the officer that the test occurred on May 18, 1985, and the offered test record indicating the date the test occurred was May 17. The trial court was not clearly erroneous when it concluded that the Commissioner failed to prove by a preponderance of the evidence that respondent took a test which resulted in an alcohol concentration reading of .10 or more on May 18, 1985.

## DECISION

The trial court's order rescinding the revocation is affirmed.

Affirmed.

LANSING, J., dissents.

LANSING, Judge (dissenting).

I dissent. I would hold the trial court erred as a matter of law in concluding the Commissioner failed to meet his burden of proving the petitioner failed an Intoxilyzer test. The court relied solely on the discrepancy in dates for the "factual inference" that the May 17 test record may not be the one that corresponds to the May 18 arrest. The test record, admitted into evidence without objection, was identified by Trooper Swanson as a copy of the test record he used "on Mr. Montpetit." Swanson testified that he filled in the top, Montpetit's date of birth and other information. He identified his initials on the test record and identified his signature where he signed after the test. He acknowledged on cross-examination that of the eight arrests he had made in the last month, he did not remember the exact test record of each defendant and refreshed his memory by reviewing the test records. He also testified that he independently recalled the situation involving Mr. Montpetit.

The first paragraph in the transcript of this implied consent hearing contains the following stipulation:

MR. McCLOUD [attorney for petitioner]: Your Honor, on this particular matter, we are going to pick this case up from the point of reading the Implied Consent Advisory. Essentially, what we will stipulate to is in that in this case there was speeding. There was a proper basis for the stop, and he smelled the odor of alcohol. Therefore, there was a proper basis for DWI or probable cause DWI. Mr. Montpetit was, in fact, driving the car. We will pick up the case from the point of reading the Implied Consent Advisory.

By this stipulation the petitioner acknowledged that there was *one* incident at issue. In light of the stipulation and the officer's undisputed testimony, the trial court's "finding" that the test record is not from any test that may have been given to the petitioner following his arrest on May 18 is contrary to the facts.

The Commissioner met his burden of proving that petitioner took a test, that the results indicated an alcohol concentration of 0.10 or more at the time of testing, and that the test was reliable.