**Mary Karen SCHMIDT, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C2–92–40.**

Court of Appeals of Minnesota.

June 30, 1992.

Theodore K. Abe, Law Offices of Gerald C. Magee, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey F. Lebowski, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

FORSBERG, Judge.

Appellant Mary Karen Schmidt was arrested for driving while under the influence of alcohol, and her driver's license was revoked by the Commissioner of Public Safety in accordance with the implied consent law. She thereafter filed a petition for judicial review, and sought rescission of the revocation.

At a district court hearing, Schmidt argued the officer's stop of her vehicle was not lawful; the officer did not have probable cause to invoke the implied consent law and require her to take a chemical test; and she was denied or prevented by the officer from taking an additional test. Schmidt's arguments were rejected, and the district court issued an order sustaining revocation of her driver's license.

The sole issue on appeal is whether the district court properly concluded that the police officer did not prevent the driver from obtaining an additional test. We affirm.

## FACTS

On September 16, 1991 at about 12:10 a.m., Crystal Police Officer Scott Santrizos stopped and arrested Schmidt for DWI. He then transported her to the police station, where he read her the implied consent advisory. Schmidt indicated she understood the advisory and wished to consult an attorney. Santrizos furnished Schmidt a telephone. After talking with attorney Gerald Magee for about two minutes, Schmidt consented to take a breath test. The test record, which was received into evidence at the hearing, establishes Schmidt's breath sample registered an alcohol concentration of .16.

Attorney Magee testified that when Schmidt called him, he advised her to take the test. He then went to the police station, arriving shortly after 1:00 a.m. He testified he asked to see Schmidt and was told she was being processed for DWI.

After the test was completed, Magee told Officer Santrizos that he would like to take Schmidt home. Santrizos checked with his supervisor, returned, and told Magee he could take Schmidt home. Magee testified:

> At that time, I said I'd like to have her tested by a physician, have a blood test or a test, another test taken by a technician. And he said it's our policy that those technicians or the doctor has to come to the police station so we can supervise, see that the test is taken in a proper manner. And I said, you have to be kidding. He said, that's our policy.
>
> \*   \*   \*   \*   \*   \*
>
> Ms. Schmidt [then] came out of one of the doors. She was walking towards the exit and I took her by the arm, walked her back to the officer and asked the officer again so I could have my client hear it and I could hear it again what the policy of the police department was. And I said we are desirous to having a test made by a person of our own choos-

ing, either going to be blood or urine. He said * * * it's our policy to have to come to the police department and administer the test in a proper manner. That was the end of the conversation. I bid him goodnight. He said goodnight and we walked out.

Magee testified he did not ask to use the phone at the police station because there was no phone there. Santrizos stated that if Magee or Schmidt asked, he would have let them use the phone.

Magee and Schmidt then left the station. Magee drove Schmidt home, where he called a hospital. He asked if a physician or technician would go to the police station to administer a test. He was informed "they would not do that and that [they] have never done that and refused to allow a physician, ER physician or technician to come back out to the Crystal Police Department with my client to take the test." No additional test was obtained.

### ISSUE

Did the police officer prevent an additional test within the meaning of Minn.Stat. § 169.123, subd. 3 (1990)?

### ANALYSIS

After a person submits to testing under the implied consent law, she has the right to have additional tests made by someone of her own choosing. Minn.Stat. § 169.123, subd. 2(b)(6) (Supp.1991). To that effect, the law provides:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace

officer unless the additional test was prevented or denied by the peace officer. Minn.Stat. § 169.123, subd. 3 (1990).

■ In determining whether an additional test has been prevented or denied, courts have distinguished between cases in which the officer failed to assist and those in which the officer hampered an attempt to obtain a test. *Theel v. Commissioner of Pub. Safety*, 447 N.W.2d 472, 474 (Minn. App.1989), *pet. for rev. denied* (Minn. Jan. 8, 1990). This case falls into the latter category. Schmidt does not claim Officer Santrizos failed to assist her in any way. Indeed, an officer need only allow a driver the use of a telephone; he need not transport the driver to a hospital, locate and take the driver to a physician, or arrange for the physician to come to the jail. *See Short v. Commissioner of Pub. Safety*, 422 N.W.2d 40, 42 (Minn.App.1988).

■ Rather, Schmidt argues Officer Santrizos prevented her from obtaining an additional test by setting forth an "additional requirement" that the test be administered at the police station. Schmidt insists this information was incorrect and misleading.

However, Minn.Stat. § 169.123, subd. 3 "is nothing more than an *affirmation* of the right of persons *being held in custody* to have an independent test administered while being held. In other words, the statute does not restrict the manner in which a driver, once released, obtains independent scientific tests." *Frost v. Commissioner of Pub. Safety*, 348 N.W.2d 803, 805 (Minn. App.1984) (emphasis in original). Thus, the information given by Officer Santrizos was a correct statement of the law as it pertains to persons in custody.

Even if Santrizos' statements may be characterized as inaccurate, we cannot conclude that those statements in any way hampered Schmidt from obtaining an additional test. The statements merely informed Schmidt and Magee as to the policy of the police department; the statements cannot be interpreted as an order by Santrizos in any way limiting Schmidt once she was released from custody. Once a driver is released from custody, the law does not

restrict the manner in which she obtains an additional test. *Id.*

In addition, an attorney's misinterpretation of the law generally has no bearing upon whether an officer prevented or denied a driver from obtaining an additional test. In *Frost*, the driver did not have additional tests taken because his father, who was an attorney, believed any test taken away from the police station would be valueless. In rejecting the driver's claim that the officer prevented or denied him from taking an additional test, this court stated:

> The fact that defendant did not obtain an additional test upon his release because he relied upon his father's belief that the tests would be of no evidentiary value is also of no consequence. An officer has no duty to continue to hold a person in custody until additional tests can be administered. Once released, a person can obtain any kind of test desired, anywhere he chooses. The test must meet the usual evidentiary standards to be admitted into evidence.

*Id.* Thus, the fact that Magee misinterpreted Santrizos' statement of the law is irrelevant on the issue of whether Santrizos hampered Schmidt from obtaining an additional test.

In support of her position, Schmidt relies on *Theel*, wherein the driver was allowed to make several telephone calls but was unable to get anyone to come to the jail to give him an additional test. He testified that when he finally asked for an attorney, one of the officers stated: "Forget it. They're all asleep." *Theel*, 447 N.W.2d at 473. This court concluded that the officer's action prevented the defendant from contacting an attorney who could help him obtain an additional test. *Id.* at 474. Significantly, the defendant in *Theel* was in custody at all times and was unrepresented by counsel; in this case, Schmidt was represented by an attorney and was released from custody within an hour or so of her arrest. She had ample time to find someone to administer additional tests.

Finally, Schmidt argues due process requires the test results be suppressed when an officer's statements are misleading. In *McDonnell v. Commissioner of Pub. Safety*, 473 N.W.2d 848, 853 (Minn. 1991), the supreme court recognized that it "has consistently noted its concern that law enforcement officials not mislead individuals with respect to their obligation to undergo blood alcohol content testing." However, the cases cited by the supreme court in *McDonnell* indicate that an officer must not "actively" mislead an individual regarding her statutory obligation to undergo testing. *Id.* at 854. In this case, Officer Santrizos' statements cannot be characterized as an attempt to misstate the law in order to hamper Schmidt's right to obtain additional tests.

In conclusion, we agree with the Commissioner that Officer Santrizos' information was accurate as it pertained to a person in custody. The mere fact that the information was misinterpreted by Schmidt's attorney has no bearing on whether the officer prevented her from obtaining an additional test. The attorney either knew or should have known that the officer's statements only applied to persons in custody, and that once released Schmidt was free to obtain additional tests without restriction.

## DECISION

The district court's order sustaining revocation of Schmidt's driver's license is affirmed.

Affirmed.