Larry James HOTCHKISS,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C8–96–181.

Court of Appeals of Minnesota.

Aug. 27, 1996.

Review Denied Oct. 29, 1996.

John C. Brink, Daniel L. Gerdts, Minneapolis, for Appellant.

Hubert H. Humphrey III, Attorney General, Joel A. Watne, St. Paul, for Respondent.

Considered and decided by PETERSON, P.J., and NORTON and HOLTAN,* JJ.

## OPINION

NORTON, Judge.

This case arises from appellant's arrest for driving under the influence of alcohol (DWI). Respondent Commissioner of Public Safety revoked appellant's driver's license. Appellant sought judicial review and rescission of the license revocation. He now challenges the trial court's order sustaining the revocation. We affirm.

## FACTS

At approximately 1:55 a.m. on August 6, 1995, Officer David McNichols observed appellant Larry Hotchkiss driving erratically and at an unusually slow speed. He stopped appellant and noted a strong odor of alcohol on his breath. McNichols asked appellant to perform field sobriety tests, which appellant failed. McNichols arrested appellant for violation of Minn.Stat. § 169.121 (1994).

McNichols transported appellant to the Orono Police Department where he read appellant the implied consent advisory. When appellant stated he wanted to speak with an attorney, McNichols provided him access to a telephone and telephone book for a period of approximately 44 minutes, until 3:08 a.m. During that time, appellant talked to an attorney for 19 minutes until the attorney eventually hung up on him. McNichols then asked appellant to have a seat. The following exchange then occurred:

Appellant: What are my options? Do I have, ah, ah, any, ah—

McNichols: This is your option: I'm going to ask you one more time if you'll take a breath test. You can say "yes," at which point I will give you a breath test. You can say "no," at which point you will be listed as a refusal. And all of the pains and penalties that come with refusal will come with it.

Appellant: I can't take another test, like a urination test, or a—

McNichols: No, it's a test at my discretion.

Appellant: Yes, Sir.

McNichols: You will take a breath test?

Appellant: Yes, Sir.

Appellant then asked to go to the bathroom, which delayed the testing several minutes. McNichols then prepared the Intoxilyzer machine for testing and explained the test to appellant. After McNichols's explanation of the test, the following exchange occurred:

Appellant: If I, if I wanted another test or something could I get that or—

McNichols: You'll have to get that on your own. I'm not gonna—

Appellant: I mean can I pay, pay for it on my own?

McNichols: Yup, at the hospital, if you want.

Appellant: So I can have that option?

McNichols: Yeah.

Appellant then provided a breath sample for testing on the Intoxilyzer.

While McNichols readied the machine for the second breath sample, he asked appellant if he had any friend or family in the Orono, Minnetonka, or Plymouth areas. Appellant explained that he had a brother who lived in Shoreview, but his brother was not at home. He did not believe that his brother's wife would come and get him. He then stated that his father, who lived in Bloomington, could pick him up. McNichols commented that Bloomington was quite a distance from the station. At this point, appellant supplied

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

a second breath sample, which was completed at 3:22 a.m.

After appellant gave the second breath sample, McNichols asked for appellant's father's telephone number and immediately called him. Almost 16 minutes elapsed between appellant's question about "options" to alternative testing, asked prior to the first breath test, and McNichols's call to appellant's parents. Appellant's mother answered the call. The ensuing conversation was in appellant's presence and lasted for approximately four and one-half minutes, during which time McNichols gave detailed directions to the police station. Appellant did not ask to speak with his parents, nor did he ask again about additional testing. Toward the end of the conversation, McNichols explained that he could not leave to make any further police calls until someone arrived to pick up appellant. He asked appellant's parents to come as soon as possible, explaining that the only other option would be for him to take appellant to the county jail, but "I do not want to do that," he said. McNichols then locked appellant in a holding cell until appellant's parents arrived. The tab charge shows that appellant was released to his parents at 4:15 a.m., but the booking sheet shows a release time of 4:35 a.m.

The Intoxilyzer test showed an alcohol concentration of .20 for appellant. As a result of this test, respondent Commissioner of Public Safety revoked appellant's driver's license for a period of 90 days.

Appellant sought judicial review and rescission of the implied consent revocation on the grounds that his arrest was based on an unlawful stop and that the arresting officer prevented him from obtaining additional chemical testing by a person of appellant's own choosing. The trial court determined that McNichols had an articulable suspicion justifying the investigatory stop of appellant and that he did not deny appellant the ability to have a second independent test performed. In a memorandum incorporated by reference to the order sustaining the revocation, the

court explained that McNichols's advice regarding an additional test misled appellant to believe a second test "would have to be obtained off site," but did not prevent or deny appellant from obtaining a second test while in custody.

On appeal to this court, appellant raises only the issue of whether the trial court properly concluded that McNichols did not prevent appellant from obtaining an additional test.

## ISSUE

Did Officer McNichols's comment that appellant could obtain additional alcohol concentration testing at a hospital after his release prevent or deny appellant's access to additional testing under Minn.Stat. § 169.123, subd. 3 (1994)?

## ANALYSIS

■ The implied consent law provides that any person who drives a motor vehicle consents, subject to certain conditions, to chemical testing to determine alcohol concentration. Minn.Stat. § 169.123, subd. 2(a) (1994). The statute also provides for additional testing:

> The person tested has a right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

Minn.Stat. § 169.123, subd. 3 (1994).[1] The statute does not *limit* additional testing to

---

1. The statute used to require that, as part of the implied consent advisory, an officer must inform the individual that he "has the right * * * to have additional tests made by someone of the person's own choosing," but the statute no long-

er requires this advisory. *Compare* Minn.Stat. § 169.123, subd. 2(b) (1990) *with* Minn.Stat. § 169.123, subd. 2(b) (1994). *See Ruffenach v. Commissioner of Pub. Safety,* 528 N.W.2d 254,

the place of custody, but instead the statutory right to additional testing

is nothing more than an *affirmation* of the right of persons *being held in custody* to have an independent test administered while being held. In other words, the statute does not restrict the manner in which a driver, once released, obtains independent scientific tests.

*Frost v. Commissioner of Pub. Safety*, 348 N.W.2d 803, 805 (Minn.App.1984), *cited in Quick v. Commissioner of Pub. Safety*, 429 N.W.2d 298, 300 (Minn.App.1988), *review denied* (Minn. Nov. 23, 1988).

Appellant contends that McNichols's response to his inquiry about obtaining an alternate test at his own expense was inaccurate, misleading, and "prevented or denied" appellant an additional test while in custody. Minn.Stat. § 169.123, subd. 3. Appellant also raises three additional arguments for the first time on appeal for rescission of the revocation of his driver's license. Respondent commissioner has not challenged these arguments as being improperly before this court. We will address each argument in turn.

## A.   Right to in-custody test

■ In determining whether an officer has prevented or denied an additional test, we have distinguished between cases where the officer failed to assist and those where the officer "hampered an attempt to obtain a test." *Theel v. Commissioner of Pub. Safety*, 447 N.W.2d 472, 474 (Minn.App.1989), *review denied* (Minn. Jan. 8, 1990).

Appellant contends that this case does not concern a claim of failure to assist, but that, instead, it involves the hampering of his attempt to obtain a test similar to the situation in *Theel*. There, Theel had called four hospitals, which all refused to send personnel to the jail to perform a test. *Id.* When Theel then asked to call an attorney to assist him to obtain an additional test, the officer replied: "Forget it. They're all sleeping." *Id.* at 473. Because the officer "hindered [Theel's] attempt" to "call an attorney to assist him in exercising his right to obtain an

additional test," this court held "that [Theel's] statutory right to obtain an additional test was prevented or denied." *Id.* at 474.

The Commissioner argues that *Theel* and similar cases regarding "hampering" an attempt to obtain additional testing do not apply here, because appellant did not request an additional test but instead only inquired about the "procedures" regarding such a test. As the trial court found here:

[Appellant] asked Officer McNichols to explain the "procedure" for arranging a second test. The record does not reflect that [appellant] actually asked to have a sample taken for a second test or actually asked to have a second test administered.

The court stated that, although McNichols's advice was misleading, "the whole essence of [appellant's] case is that Officer McNichols did not 'assist' [him] to obtain a sample for a second test." We agree.

■ The statute does not obligate an officer to assist a driver in obtaining an additional test, other than to allow the defendant use of a telephone. *Frost*, 348 N.W.2d at 804 (citing *State v. Streitz*, 276 Minn. 242, 150 N.W.2d 33 (1967)). Nor does the statute impose a duty on an officer to continue holding a person in custody until additional tests can be administered. *Frost*, 348 N.W.2d at 805. In *Frost*, the defendant's father (an attorney) had called a doctor from the police station. *Id.* at 804. He asked the arresting officer to talk to the doctor to finalize the arrangements for in-custody testing; the officer refused. *Id.* We held that the officer had no duty to talk to the doctor on the telephone, but only had a duty to provide access to a telephone. *Id.* at 805.

In concluding that McNichols's misleading advice had not "prevented" or "denied" appellant access to an independent alcohol concentration test, the trial court here relied on a case that concerned misleading statements of an officer. *See Short v. Commissioner of Pub. Safety*, 422 N.W.2d 40 (Minn.App.1988). In that case, Short argued that he had not been given timely access to the telephone while in custody and that an officer in the jail

256 (Minn.App.1995) (holding amended advisory

does not violate procedural due process).

made misleading statements to him about his rights. *Id.* at 42. Specifically, Short claimed that the officer told him that additional tests were not given at the jail. *Id.* at 41. Short was held in custody for four hours. *Id.* While Short was in the jail, his attorney talked to a different officer in an attempt to obtain Short's earlier release, but he did not ask about obtaining an additional test at the jail. *Id.* We affirmed the trial court's finding that no prevention or denial of Short's rights occurred; we noted that the record contained "no evidence that [Short] was prevented or denied from arranging a test at the jail." *Id.*

In another case involving an officer's misleading statements, the officer had told the defendant's attorney that the defendant was ready for release, but if she wanted an additional test, a technician or doctor would have to come to the police station for that purpose. *Schmidt v. Commissioner of Pub. Safety,* 486 N.W.2d 473, 476 (Minn.App.1992). We determined that the officer's statements did not limit Schmidt once she was released from custody, because "the law does not restrict the manner in which she obtains an additional test." *Id.* at 475–76. We affirmed the revocation of Schmidt's license, after concluding that the officer's misstatement of law could not "be characterized as an attempt to misstate the law in order to hamper Schmidt's right to obtain additional tests." *Id.* at 476.

Here, appellant asked about the "procedures" for obtaining an additional test, but did not ask that a second test be administered. McNichols misinformed him by indicating that testing was available only upon his release. At the hearing, McNichols explained that the police department policy was to arrange in-custody testing at Hennepin County Jail if the officer was not going to release the person, but "if we're going to release them we release them in as quick a manner as possible." With regard to the police department policy, appellant's counsel asked: "If they're to be released you don't permit a second test or you don't do anything about facilitating a second test at the station?" McNichols answered, "Correct." At the hearing, appellant did not inquire of

McNichols whether he would have denied or allowed appellant access to the telephone if appellant had asked to make a call to arrange an in-custody test. Appellant asks that we infer from McNichols's testimony that McNichols would have denied him an in-custody test had appellant requested one. The trial court did not make such a finding, and we may not do so on appeal. *See State, Dept. of Pub. Welfare v. Thibert,* 279 N.W.2d 53, 56 (Minn.1979) (appellate court must view evidence and its reasonable inferences in light most favorable to prevailing party).

As the trial court found, appellant did not ask to have a second test administered and he did not make any efforts whatsoever to do so. Appellant did not ask again about testing after his initial inquiry before he took the first Intoxilyzer test. His question to McNichols at that time was a general inquiry about the procedure for obtaining an alternate test to the Intoxilyzer. "An attorney, not a police officer, is the appropriate source of legal advice" regarding the alternative choices at the chemical testing stage of DWI proceedings. *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 833 (Minn. 1991). Here, appellant spoke to an attorney for approximately 19 minutes before submitting to testing.

McNichols's response to appellant's general inquiry was not actively misleading and did not rise to the level of *Theel* so as to hamper appellant's attempt to obtain additional testing while in custody. The trial court's findings are not clearly erroneous. The court did not err in its application of law when it determined that McNichols did not prevent or deny appellant the opportunity for additional testing.

**B. Test by person of appellant's own choosing**

Appellant argues for the first time on appeal that McNichols's misleading advice about testing at a hospital denied his right to testing by someone of his own choosing at some place other than a hospital. He claims that he expressed an interest in urine testing

during the implied consent procedure.[2] He argues that McNichols affirmatively misled him "to believe testing was available *only* at a hospital and *only* from persons who would surely require an absurd sum of money for the service."

Appellant did not present this issue to the trial court, nor does the record show that the trial court considered it; we must refuse to do so for the first time on appeal, "especially * * * when facts on which the * * * issue rests are in dispute." *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

## C. Timely test

■ Appellant claims that McNichols's misleading information violated his right to due process, because it prevented him from obtaining additional testing "within sufficient time for it to be effective in challenging the results of the test administered by McNichols." *See Schmidt,* 486 N.W.2d at 476 (recognizing that officer's misstatement about alternative testing may violate individual's right to due process if statement may be "characterized as an attempt to misstate the law in order to hamper [an individual's] right to obtain additional tests"; but holding misinformation in that case had not prevented individual's right to obtain additional test).

This issue, raised for the first time on appeal, is not properly before us. *See Thiele,* 425 N.W.2d at 582 (refusing to review issue not first presented to trial court). Further, as we concluded above, the trial court correctly determined that McNichols did not actively hamper appellant's right to obtain a second test while in custody. Finally, according to the sequence of events here, appellant could have received testing at the nearest hospital approximately three hours after he was stopped. Appellant has supplied no evidence or case law that a test within approximately three hours of his driving would not be admissible. This court has affirmed the admission of tests administered

as much as 11½ hours after driving. *State v. Jensen,* 482 N.W.2d 238, 239–40 (Minn.App. 1992), *review denied* (Minn. May 15, 1992). Given appellant's alcohol concentration of .20 at 3:22 a.m., it would likely be more than five hours before his concentration would dip below .10, the statutory limit. *See id.* at 240 (discussing the elimination rate after alcohol consumption). This record cannot support appellant's claim that McNichols violated his due process rights and prevented a timely additional test.

## D. Orono Police Department policy

Finally, appellant contends that the Orono Police Department policy concerning additional testing violates the implied consent statute. Although appellant makes this argument for the first time on appeal, we note that the trial court, in open court, commented that the police department's policy violated Minn.Stat. § 169.123, subd. 3.

The police department's policy is not at issue here, even though there is a basis for concern that the policy violates an individual's right to in-custody testing under Minn. Stat. § 169.123, subd. 3. Rather, the issue is whether, on the facts of this particular case, McNichols denied appellant's right to additional testing. As we have concluded above, the trial court did not err when it determined that McNichols did not violate appellant's rights.

## DECISION

The trial court did not err when it determined Officer McNichols's misleading statement did not prevent or deny appellant's right to additional testing under Minn.Stat. § 169.123, subd. 3. Appellant's arguments regarding timely testing, testing by a person of his own choosing, and his challenge to the police department policy regarding additional

---

2. As the Commissioner notes, appellant's argument misrepresents what he said to McNichols about a urine test. Appellant suggests that he expressed a "specific interest" in an *additional* urine test. Neither the tape nor McNichols's testimony supports this argument. Appellant did

not testify at the hearing. The tape demonstrates that appellant's comment about a urine test was an inquiry whether he could take a urine test *instead of* the breath test that McNichols was then explaining he would have to take.

testing were not raised below and may not change this conclusion.

**Affirmed.**