# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0142

Kristin Marie Poeschel, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed October 26, 2015**
**Affirmed**
**Larkin, Judge**

Goodhue County District Court
File No. 25-CV-14-2362

Charles A. Ramsay, Daniel J. Koewler, Suzula R. Bidon, Ramsay Law Firm, PLLC, Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, William J. Young, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Peterson, Judge; and Larkin, Judge.

## S Y L L A B U S

An officer does not violate a driver's statutory right to an additional chemical test under Minnesota's implied-consent law by not offering the driver use of a telephone after the state's test, where the driver does not request posttest access to a telephone.

## O P I N I O N

**LARKIN**, Judge

Appellant challenges the district court's order sustaining the revocation of her driver's license under Minnesota's implied-consent law, arguing that her statutory right to an additional chemical test was not vindicated and that her fundamental rights to due process were violated. We affirm.

## FACTS

On August 4, 2014, Officer Brad Arens of the Prairie Island Police Department responded to a gas station to investigate a report that an individual was unable to pay for gasoline. Officer Arens identified the individual as appellant Kristin Marie Poeschel. Officer Arens noticed that Poeschel's speech was slurred, her eyes were glossy, and her breath smelled like alcohol. Poeschel admitted that she had consumed alcoholic beverages and that she had driven to the gas station.

Officer Arens arrested Poeschel for driving while impaired (DWI), transported her to the Prairie Island Public Safety Office, and read her Minnesota's implied-consent advisory. Poeschel contacted an attorney. While Poeschel was on the telephone with the attorney, she informed the officer that she wanted an additional test. She also asked if the officer had a warrant for chemical testing. Poeschel told the officer that, "[b]ecause I am being coerced, I will give you a test" and "I'll take the urine test because I am required

2

to."[1]  Poeschel was transported to the Goodhue County Jail, where she provided a urine sample.  She did not repeat her earlier request for an additional test after providing the sample.  Chemical testing of the sample revealed an alcohol concentration of 0.141, prompting respondent commissioner of public safety to revoke Poeschel's driver's license.

Poeschel petitioned for judicial review of the license revocation, arguing that the collection of her urine was a warrantless search in violation of the Fourth Amendment, that she was denied due process of law, and that her statutory right to an additional test was not vindicated.  The district court sustained the license revocation, determining that (1) the warrantless collection of Poeschel's urine did not violate the Fourth Amendment because she voluntarily consented to provide the sample; (2) Poeschel "was not misled by the virtue of the language contained within the Minnesota Motor Vehicle Implied Consent Advisory in violation of her due process rights"; and (3) Poeschel was not denied her statutory right to an additional test.

Poeschel appeals.

**ISSUES**

I.      When proceeding under Minnesota's implied-consent statute, is an officer required to offer a driver posttest use of a telephone where the driver informs the officer that she wants an additional chemical test but does not request posttest access to a telephone?

---

[1] The recording of the conversation between Officer Arens and Poeschel was not included in the record available to this court.  This account is based on undisputed facts as they were presented in the parties' briefs.

II.     Do appellant's constitutional claims provide a basis for relief?

**ANALYSIS**

**I.**

Poeschel contends that the results of the state's chemical test of her urine are inadmissible because law enforcement failed to vindicate her statutory right to an additional chemical test. A law-enforcement officer may request that a driver submit to a chemical test of the person's blood, breath, or urine, if the officer has "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired and the driver "has been lawfully placed under arrest" for driving while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2014). However,

> [t]he person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person does not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was *prevented or denied* by the peace officer.

Minn. Stat. § 169A.51, subd. 7(b) (2014) (emphasis added).

Whether an officer unlawfully prevented or denied an additional test involves both questions of law and of fact. *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 333 (Minn. App. 2009). "The district court's findings of fact must be sustained unless clearly erroneous, but this court reviews de novo whether, as a matter of law, the driver's right to an independent test was [violated]." *Id.*

4

"In determining whether an additional test has been prevented or denied, we must draw a distinction between an officer's *failing to assist* and an officer's *hampering* an attempt to obtain such a test." *Haveri v. Comm'r of Pub. Safety*, 552 N.W.2d 762, 765 (Minn. App. 1996), *review denied* (Minn. Oct. 29, 1996). An officer must allow an additional test to be administered, but "need not act affirmatively to facilitate the test." *Id.* "The only obligation an officer has in assisting the defendant in obtaining an additional test is to allow defendant use of a phone." *Frost v. Comm'r of Pub. Safety*, 348 N.W.2d 803, 804 (Minn. App. 1984). The officer is not required to arrange an opportunity for a driver to obtain additional testing. *Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 912 (Minn. App. 1986). Moreover, "[i]t is the duty of attorneys, not police officers, to explain the extent and scope of the right to an additional test while the driver is in custody." *Duff v. Comm'r of Pub. Safety*, 560 N.W.2d 735, 738 (Minn. App. 1997) (quotation omitted). Advice and assistance regarding additional testing should come from an attorney. *See Hotchkiss v. Comm'r of Pub. Safety*, 553 N.W.2d 74, 78 (Minn. App. 1996) (noting that an attorney is the appropriate source of legal advice regarding additional testing), *review denied* (Minn. Oct. 29, 1996).

Poeschel contends that her pretest telephone access was insufficient to vindicate her right to an additional test. She argues that "[b]ecause a driver is only entitled to an additional test after first submitting to the test requested by law enforcement, it follows that vindication of the right to an additional test requires *post-test* access to a telephone" and that "law enforcement had a duty to provide [her] with telephone access to arrange an independent test *after* she submitted to the State's test."

Poeschel does not cite, and we are not aware of, any caselaw directly supporting her contention that an officer's obligation to allow the use of a telephone for the purpose of obtaining an additional test can only be satisfied after the state's test is administered. In fact, caselaw refutes Poeschel's contention. For example, this court has stated that the pretest right to counsel provides an opportunity for an attorney to advise the driver regarding the right to additional testing and to assist the driver in obtaining additional testing. *Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380, 386-87 (Minn. App. 1993), *aff'd*, 517 N.W.2d 901 (Minn. 1994). Also, this court has held that a driver's limited right to pretest counsel was violated where a police officer terminated the driver's telephonic attorney consultation before the driver had an opportunity to obtain advice regarding additional testing. *Duff*, 560 N.W.2d at 738. In doing so, we rejected the commissioner's argument that a driver's pretest failure to receive advice regarding additional testing is inconsequential because such advice could reasonably be postponed until after the state's test. *Id.*

Poeschel relies on *Theel v. Comm'r of Pub. Safety*, 447 N.W.2d 472 (Minn. App. 1989), *review denied* (Minn. Jan. 8, 1990). In *Theel*, the driver asked for additional testing and attempted to arrange a test after submitting to the state's test. 447 N.W.2d at 473. The driver made several calls to hospitals, but no one from the hospitals would go to the jail to administer a chemical test. *Id.* The driver told the jail staff that he was not able to get help from any hospital and asked if he could call an attorney to arrange an additional test. *Id.* The staff responded "[f]orget it. They're all sleeping." *Id.* This court determined that the driver "wanted to call an attorney to assist him in exercising his right

6

to obtain an additional test and the officer hindered his attempt." *Id.* at 474. This court therefore held that the driver's statutory right to additional testing was prevented or denied. *Id.*

Unlike the circumstances in *Theel*, the record does not reveal any attempt by Poeschel to arrange an additional test. More importantly, Poeschel did not ask to use a telephone to arrange an additional test after she submitted to the state's test. If the officer in this case had refused such a request, we would likely conclude that the officer prevented or denied an additional test. *See id.* But those are not the circumstances here.

Essentially, Poeschel asks this court to create an affirmative duty requiring an officer to offer a driver posttest use of a telephone to arrange an additional test even though the driver has not asked to use the phone. We decline to do so. Caselaw consistently describes an officer's obligation as allowing the use of a telephone, as opposed to offering the use of a telephone. *See, e.g.*, *Cosky v. Comm'r of Pub. Safety*, 602 N.W.2d 892, 894-95 (Minn. App. 1999) (determining that a driver's right to additional testing was vindicated when "all of [the driver's] requests to use a telephone were granted"), *review denied* (Minn. Jan. 18, 2000); *Hotchkiss*, 553 N.W.2d at 77 (stating that the statute imposes no obligations on officers "other than to allow the defendant use of a phone"); *State v. Whitehead*, 458 N.W.2d 145, 150 (Minn. App. 1990) (concluding that officer did not prevent an additional test where the driver was never refused use of a telephone), *review denied* (Minn. Sept. 14, 1990); *Theel*, 447 N.W.2d at 474 ("The only obligation an officer has is to allow the use of a telephone."); *Hager*, 382 N.W.2d at 911 ("Even while in custody, the only obligation that [the officer] had was to

7

allow [the driver] the use of a telephone."); *Frost*, 348 N.W.2d at 804 ("The only obligation an officer has . . . is to allow [the] defendant use of a phone.").

Requiring an officer to offer posttest use of a telephone in the absence of a request would mandate assistance that is not required under law. *See Schulz*, 760 N.W.2d at 334 (noting that "the law significantly limits a peace officer's obligations with regard to a driver's exercise of the statutory right to an additional test"); *Haveri*, 552 N.W.2d at 765 (distinguishing between failing to assist and hampering when determining whether the statutory right to an additional test has been vindicated).

Poeschel had the opportunity to consult with an attorney on the telephone regarding the implied-consent process and her statutory right to an additional test. She does not allege that the officer inappropriately limited her attorney consultation. And she did not mention additional testing or ask to use a telephone after her attorney consultation or after the state's test. These undisputed facts show that the officer did not prevent or deny an attempt to obtain additional testing. In sum, Poeschel's statutory right to an additional test was not violated.

## II.

Poeschel also contends that the revocation of her driver's license must be rescinded "because law enforcement violated [her] fundamental due process rights under the United States and Minnesota Constitutions." "Whether a due process violation has occurred presents a question of constitutional law, which [appellate courts] review de novo." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). We address each of Poeschel's due-process claims in turn.

8

*Warrantless Search*

Poeschel first claims that she "had a fundamental, due process right to a warrant issued by a neutral magistrate" and that "the commissioner did not meet its burden to prove that a specifically established and well delineated exception to the warrant requirement is present in [this] case." Although Poeschel attempts to frame her first claim as one sounding in due process, it is a Fourth Amendment claim. "[I]f a claim is covered by a specific constitutional provision, that claim must be analyzed according to the standards established by the specific provision, and not as a possible violation of the claimant's substantive-due-process rights." *State v. Mellett*, 642 N.W.2d 779, 783 (Minn. App. 2002), *review denied* (Minn. July 16, 2002).

The United States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a urine sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709-10 (Minn. App. 2008). Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). One such exception is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973). "For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied* 134 S. Ct. 1799 (2014).

"Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted). The question of whether an individual voluntarily consented to a search is a question of fact. *Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2047-48. Therefore, this court reviews the district court's finding of voluntary consent for clear error. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "Findings of fact are clearly erroneous if, on the entire evidence, [a reviewing court is] left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47.

Poeschel argues that the district court erred by determining that she freely and voluntarily consented to the collection of her urine sample. Whether Poeschel voluntarily consented requires consideration of all of the relevant circumstances, including "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted).

Our review of the record does not leave us with a definite and firm conviction that the district court erroneously found that Poeschel's consent was voluntary. We are guided by *Brooks*, in which the supreme court concluded that a driver voluntarily consented to three chemical tests for alcohol concentration because he did not dispute that the police had probable cause to believe that he had been driving under the influence; he did not "contend that police did not follow the proper procedures established under the implied consent law"; the police read "the implied consent advisory before asking [the driver] whether he would take all three tests, which makes clear that drivers have a choice of whether to submit to testing"; the "police gave [the driver] access to telephones to contact his attorney and he spoke to a lawyer"; and "[a]fter consulting with his attorney,

[the driver] agreed to take the tests in all three instances." *Id*. at 569-70, 572. The supreme court further noted that, although the driver was in custody, he "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id*. at 571.

Applying *Brooks*, the circumstances do not suggest that Poeschel was coerced into providing a urine sample. As in *Brooks*, Poeschel does not dispute that Officer Arens had probable cause to believe that she had been driving under the influence or that he properly read the implied-consent advisory. Poeschel indicated that she understood the implied-consent advisory and, after consulting with an attorney, she agreed to submit to chemical testing. Lastly, when Poeschel agreed to provide a urine sample, she had not been confronted with repeated police questioning or held in custody for an unreasonable period of time.

Poeschel argues that her consent was involuntary because she told the officers "she would take the urine test only because she was required to do so by law." But in *Brooks*, the supreme court rejected the argument that consent is per se involuntary because of the attendant threat of a criminal charge for test refusal, concluding that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570.

Poeschel further argues that her consent was involuntary because there are "several undeniably coercive facts" in her case, including that she was asked to perform field sobriety tests, handcuffed during her arrest, and placed in a locked police car. But in *Brooks* the supreme court found that Brooks's consent was voluntary even though he

11

was impaired by alcohol, under arrest, and in custody. *Id.* at 565-66, 572. Rather than showing an "undeniably coercive" atmosphere, the facts here show a routine arrest for DWI. The record does not suggest that Poeschel "was coerced in the sense that [her] will had been overborne and [her] capacity for self-determination critically impaired." *See id.* at 571 (quotation omitted). In sum, the district court did not clearly err by finding that Poeschel voluntarily consented to provide a urine sample for chemical testing.

### *Summary Advisory*

Poeschel also claims that her due-process rights were violated because the officer told her that refusal to submit to a urine test was a crime even though she could have legally refused to submit to a urine test so long as she ultimately submitted to a chemical test. *See* Minn. Stat. § 169A.51, subd. 3 (2014) ("The peace officer who requires a test pursuant to this section may direct whether the test is of blood, breath, or urine. Action may be taken against a person who refuses to take a blood test only if an alternative test was offered and action may be taken against a person who refuses to take a urine test only if an alternative test was offered.").

This court rejected a similar claim in *Moe v. Comm'r of Pub. Safety*, 574 N.W.2d 96 (Minn. App. 1998), *review denied* (Minn. Apr. 14, 1998). In *Moe*, two drivers were arrested for driving under the influence. *Id.* at 97. Both drivers were read the implied-consent advisory and told that "refusal to take a test is a crime." *Id.* at 97-98. Both drivers consented to provide samples for testing. *Id.* The drivers later challenged the revocations of their licenses, arguing that

12

> the advisory, which failed to offer an alternative test, was inaccurate, misleading, and threatened them with potential criminal penalties that the state was not authorized to impose. *See McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 854-55 (Minn. 1991) (holding part of implied consent advisory unconstitutional where it threatened unauthorized criminal charges).

*Id.* at 98. This court rejected that argument, noting that "a state does not violate the fundamental fairness inherent to due process by choosing not to advise individuals of all the possible consequences of refusing an alcohol concentration test." *Id.* We held that "[a] peace officer's use of a summary advisory does not violate the law where the summary is accurate, the driver's right to counsel is vindicated, and the driver consents to the offered test." *Id.* at 99.

Here, the implied-consent advisory accurately stated that refusal to take a test is a crime, Poeschel's right to counsel was vindicated, and she voluntarily consented to the test that was offered. The summary advisory therefore did not violate Poeschel's right to due process.

### *Waiver of Statutory Right*

Lastly, Poeschel claims that

> Officer Arens violated [her] due process rights by failing to obtain [her] knowing and intentional waiver of her statutory right to refuse to permit a test. Without a valid waiver of the statutory right, the evidence generated by the violation of that statutory right–the urine test results–is inadmissible in this proceeding.

Poeschel does not offer due-process analysis or authority to support her last due-process claim. Nor does she offer legal argument or authority to support her assertion

13

that invalid waiver of a statutory right requires suppression of evidence in a civil proceeding. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). Because prejudicial error is not obvious, we do not address the merits of Poeschel's last due-process claim.

## D E C I S I O N

Because the police did not prevent or deny an additional chemical test by not offering Poeschel use of a telephone in the absence of a request, her statutory right to an additional test was not violated. In addition, the district court did not err by finding that Poeschel voluntarily consented to the collection of a urine sample for chemical testing and concluding that the warrantless collection therefore did not violate the Fourth Amendment. Lastly, Poeschel's due-process claims do not provide a basis for relief. We therefore affirm the district court's order sustaining the revocation of Poeschel's driver's license.

**Affirmed.**