**Rodney Wayne HAVERI, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C9–96–450.**

Court of Appeals of Minnesota.

Aug. 20, 1996.

Review Denied Oct. 29, 1996.

Dean S. Grau, Minneapolis, for Petitioner, Respondent.

Hubert H. Humphrey, III, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, for Appellant.

Considered and decided by NORTON, P.J., and SCHUMACHER and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Following respondent's DWI arrest, and after failing a breath test, respondent's driver's license was summarily revoked. The district court rescinded the revocation, ruling that an additional chemical test had been prevented or denied by the police. The

Commissioner of Public Safety appeals from the district court rescission order. By notice of review, respondent challenges the district court's findings that his right to counsel was vindicated and that he was afforded due process of law despite his failure to understand the scope of the Minnesota DWI law. We reverse.

## FACTS

On December 5, 1995, at approximately 9:30 p.m., respondent Rodney Haveri stopped at a restaurant in Crystal after leaving a party. At the restaurant, Haveri began to feel the effects of the alcohol he drank at the party. To avoid driving home in that condition, Haveri decided to rest in his car; he did not know that the law prohibited his being in physical control of a motor vehicle while under the influence of alcohol. Approximately two hours later, a police officer found Haveri asleep in the driver's seat of his car with the engine running; the car was located in the restaurant parking lot. Haveri was subsequently arrested for DWI.

After speaking with an attorney, Haveri submitted to a breath test, which yielded an alcohol concentration of .10 or more. Haveri then informed an attending officer that the attorney had instructed him to collect a urine sample and that someone would bring him a container. Haveri's sister, Jolene Ross–Bergh, subsequently brought a glass jar to the station. Ross–Bergh departed and the jar was taken to Haveri, who urinated in the jar in the presence of an officer. The jar was then placed with Haveri's belongings and given to him upon his release a few hours later. Haveri did not have the sample analyzed.

The Commissioner revoked Haveri's driver's license, and Haveri petitioned for judicial review pursuant to the implied consent statute. After a hearing, the district court rescinded the revocation, ruling that the police had prevented or denied an additional chemical test. This appeal followed.

1. The parties stipulated at the hearing that the results of Haveri's breath test would not be ad-

## ISSUES

1. Was an additional chemical test prevented or denied by police?

2. Was Haveri's limited right to counsel vindicated?

3. Was Haveri denied due process of law in failing to understand the scope of the implied consent law?

## ANALYSIS

1. The implied consent statute provides that after a person submits to a chemical test, he may have an additional test administered at his own expense:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was *prevented or denied* by the peace officer.

Minn.Stat. § 169.123, subd. 3 (1994) (emphasis added).

Ross-Bergh testified that when she arrived at the police station with the glass jar, an officer asked whether she was there for Haveri; Ross–Bergh replied, "Yes," and she handed the jar to the officer. She intended to pick up Haveri, but the officer told her that Haveri would not be released yet and that Ross–Bergh could leave. The jar was then delivered to Haveri in his cell.

The district court found that an additional test had been prevented or denied and accordingly rescinded the revocation.[1] The district court stated that the police were required to afford Ross–Bergh direct access to Haveri.

missible if an additional test was prevented or denied.

Generally, the district court's findings must be sustained unless clearly erroneous. *Frost v. Commissioner of Pub. Safety,* 348 N.W.2d 803, 804 (Minn.App.1984). The district court did not make credibility findings here, but it based its decision on Ross–Bergh's testimony, which the court noted was uncontradicted. Therefore, given the undisputed facts, the question of whether the police prevented or denied an additional test is a question of law. *See Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn. 1985) (where district court accepted officer's testimony as true, whether stop was valid was a legal determination).

In determining whether an additional test has been prevented or denied, we must draw a distinction between an officer's *failing to assist* and an officer's *hampering* an attempt to obtain such a test. *See Theel v. Commissioner of Pub. Safety,* 447 N.W.2d 472, 474 (Minn.App.1989) (noting with approval that courts in other states have made such a distinction), *review denied* (Minn. Jan. 8, 1990). "The only obligation an officer has in assisting the defendant in obtaining an additional test is to allow defendant use of a phone." *Frost,* 348 N.W.2d at 804. The officer is not required to talk to a doctor on the phone to arrange the test. *Id.* at 805. Nor does the officer have a duty to ask whether the arrestee wishes to use the phone to arrange an additional test. *Hager v. Commissioner of Pub. Safety,* 382 N.W.2d 907, 911–12 (Minn.App.1986); *see also Davis v. Commissioner of Pub. Safety,* 517 N.W.2d 901, 904 (Minn.1994) (upholding constitutionality of implied consent advisory form that does not advise of the right to an additional test). An officer is not required to furnish supplies or transportation to facilitate an additional test. *State v. Hatlestad,* 347 N.W.2d 843, 845 (Minn.App.1984).

Haveri argues, and the district court agreed, that the police were obliged to facilitate Ross–Bergh's personal delivery of the jar to Haveri in order to fulfill Haveri's statutory right to have a person of his own choosing administer the test. Haveri asserts that, in effect, the police actually adminis-

tered his urine test. Haveri concedes that the police must have some latitude to prohibit direct access to a person in custody in some situations, but he contends that the police could have satisfied such safety concerns here, perhaps by escorting Ross–Bergh to Haveri's cell. Ross–Bergh would then have been able to leave with the sample, thereby establishing a chain of custody.

Caselaw makes clear that officers must allow a sample to be collected and an additional test to be administered, but they need not act affirmatively to facilitate the test. In *Frost,* the arrestee's father (who was an attorney) was allowed to call a doctor from the police station, but the officer refused to talk to the doctor to set up the test. 348 N.W.2d at 804. This court held that the officer was not required to talk to the doctor; the only requirement was to allow the use of the phone. *Id.* at 804–05. In the instant case, there is no evidence that either Ross–Bergh or Haveri requested that Ross–Bergh be present during the collection of the sample. We conclude that, as in *Frost,* the police were not required to act affirmatively—they were not required to usher Ross–Bergh to Haveri's jail cell.[2]

We hold that the police did not prevent or deny an additional chemical test.

2. By notice of review, Haveri challenges the district court's conclusion that his right to counsel was vindicated.

A driver has a limited right to consult with an attorney before deciding whether to submit to a chemical test. *McNaughton v. Commissioner of Pub. Safety,* 536 N.W.2d 912, 914 (Minn.App.1995) (citing *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828 (Minn.1991)). Whether a driver was given a reasonable opportunity to consult with counsel is ultimately a question of law. *Id.*

At the hearing, an officer testified that he gave Haveri access to a telephone and phone book and that Haveri paged through the book but could not find the proper section. The officer testified that he

---

2. We neither decide nor imply that the police would have had a duty to allow Haveri's sister to . have access to him had either made such a request.

found the proper section for Haveri and that Haveri tried a couple of numbers but failed to get an answer. The officer stated that he dialed the desired number on a couple of occasions when Haveri continued to misdial. Eventually, Haveri talked to an attorney, Faison Sessoms, who advised Haveri to submit to a breath test and then request an additional urine test. The officer testified that he did not pick a specific attorney for Haveri, although he pointed out the various large advertisements for attorneys in the phone book when Haveri stated that he didn't know whom to call.

Haveri testified that he told the officer that he did not know any attorneys in the area; the officer then indicated that a number of people call Sessoms and wrote down that attorney's telephone number for Haveri. On direct examination, Haveri stated:

Well, I didn't know of any attorneys, and [the officer] said, well, there's the book, he opened it up and he says I'll write the number down. There's somebody—some people call him, you know, and so he wrote the number down for me and I called Sessoms.

On cross-examination, Haveri made the following statements:

Oh, [the officer] just said if you want to call a lawyer, and I said, yes, sir, and he says—he opened the pages to lawyers and I looked down at it, and he said, a lot of people call him, and I says, okay, and he wrote the phone number down and gave it to me and I called him. Sessoms.

\* \* \* \* \* \*

Well, [the officer] said that a lot of people use him, and he says, I'll write the phone number, is that all right, and I said yeah, and he wrote the phone number down for me.

\* \* \* \* \* \*

No, I didn't ask [the officer] to pick one. I said, I don't know any lawyers here in town and he said, well, a lot of people use this man.

The district court did not make a finding as to whether the officer suggested that Haveri call Sessoms, although it noted the conflicting testimony on the issue. Instead, the district court concluded that, even if the officer suggested an attorney as Haveri stated, Haveri's choice of attorneys was not so restricted as to constitute a violation of his right to counsel..

Haveri argues that the officer's suggestion was inherently coercive and that therefore Haveri's ability to choose his own attorney was impermissibly restricted. Haveri insists that officers should not go beyond the minimum requirement of providing access to a telephone and phone book.

■ Ordinarily, a driver must be permitted to use the phone personally when trying to obtain counsel. *Mulvaney v. Commissioner of Pub. Safety*, 509 N.W.2d 179, 181 (Minn.App.1993). We have held that an officer may not simply dial the number of the public defender, hand the phone to the driver, and tell the driver that he can talk to that attorney. *Delmore v. Commissioner of Pub. Safety*, 499 N.W.2d 839, 842 (Minn.App.1993).

Our recent decision in *McNaughton*, 536 N.W.2d 912, is relevant. There, when the driver asked to consult with an attorney, he was given a list containing the names and telephone numbers of five attorneys; after the driver chose a name from the list, the police dispatcher would dial the number. *Id.* at 913–14. We noted the following facts:

In this case, McNaughton was handed a list of five pre-selected attorneys. McNaughton was essentially limited to the attorneys on this list: he had no access to telephone books, either local or out-of-town, and he had no direct access to the telephone or directory assistance.

*Id.* at 915. We held that the driver's right to counsel was not vindicated under such circumstances "because he was not given a reasonable opportunity to consult with an attorney of his own choosing." *Id.*

Here, we hold that Haveri's right to counsel was vindicated, even accepting his version of the events. Unlike the situations in *Delmore* and *McNaughton*, Haveri was given direct access to a telephone and a phone book. By his own testimony, Haveri looked at the phone book, stated that he did not know any attorneys, and orally agreed to the

officer's writing down the telephone number of a possible attorney. Haveri's choice of attorneys was not restricted; rather, the officer merely assisted a driver who had agreed to accept such assistance. We conclude that Haveri was "given a reasonable opportunity to consult with an attorney of his own choosing."

■ 3. Also by notice of review, Haveri challenges the district court's rejection of his due process claim. Haveri argues that he was misled into believing that the law prohibited only driving while under the influence of alcohol; he was not aware that being in physical control of a vehicle was also illegal. Haveri testified that a South Dakota police officer had told him during a prior DWI incident that he should have remained parked in the vehicle and not driven on the road. Haveri also cited various television advertisements, pamphlets, billboards, and common knowledge, all indicating that it is illegal to drink and drive; Haveri stated that he assumed that sleeping in a car while intoxicated was therefore permitted. Haveri conceded on direct examination that he did not know the source of the various public service messages.

Haveri's due process argument is derived from the United States Supreme Court's decision in *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). In *Raley*, the defendants were convicted for refusing to answer certain questions before the Ohio legislature's Un–American Activities Commission after the Commission erroneously told the defendants that they could assert the privilege against self-incrimination. *Id.* at 424–25, 79 S.Ct. at 1259–60. The Supreme Court held that the convictions violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 425–26, 79 S.Ct. at 1260. The Court stated:

> While there is no suggestion that the Commission had any intent to deceive the [defendants], we repeat that to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercis-

ing a privilege which the State clearly had told him was available to him.

*Id.* at 438, 79 S.Ct. at 1266; *see also Cox v. Louisiana,* 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965) (holding that, under *Raley,* defendants could not be convicted for demonstrating too near a courthouse after they were told by the city's highest police officials that they could demonstrate there).

The Minnesota Supreme Court has apparently adopted the doctrine enunciated in *Raley,* applying the

> long-established rule that a government may not officially inform an individual that certain conduct is permitted and then prosecute the individual for engaging in that same conduct.

*State v. McKown,* 475 N.W.2d 63, 68 (Minn. 1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

We conclude, however, that this "due process entrapment" rule does not apply here. The South Dakota police officer cannot speak for the State of Minnesota, and Haveri could not establish either the exact content or the source of the announcements he had seen. Haveri did not show that the State of Minnesota officially informed Haveri or anyone else that being in physical control of a vehicle while under the influence of alcohol is permitted by law.

### DECISION

The police did not prevent or deny an additional chemical test by failing to act affirmatively and instruct Ross–Bergh to take the glass jar to Haveri and leave with the sample. Haveri's right to counsel was vindicated. Haveri was not denied due process of law by being misled about the scope of the DWI law. We reverse the district court order rescinding the revocation of Haveri's driver's license and reinstate the revocation.

**Reversed.**