**Kyle John COSKY, petitioner Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C6–99–694.**

Court of Appeals of Minnesota.

Nov. 30, 1999.

Review Denied Jan. 18, 2000.

Jeffrey B. Ring, Jeffrey B. Ring and Associates, Minneapolis, MN (for appellant).

Mike Hatch, Attorney General, Michael R. Pahl, Assistant Attorney General, St. Paul, MN (for respondent).

Considered and decided by AMUNDSON, Presiding Judge, PETERSON, Judge, and FOLEY, Judge.

## OPINION

PETERSON, Judge.*

In this appeal from an order sustaining the revocation of his driver's license under the implied consent law, appellant Kyle John Cosky argues that the district court

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

erred by concluding that his right to additional testing under Minn.Stat. § 169.123, subd. 3 (1998), was fully vindicated when police officers granted all of his requests to use a telephone to make calls. We affirm.

## FACTS

Mound police officer Bobby Donahue arrested Cosky for DWI. During the implied consent advisory, Cosky stated that he wanted to speak to an attorney. Cosky was provided with a telephone at 1:36 a.m., and he finished using it at 1:58 a.m. During that time, Cosky spoke with an attorney, but they did not discuss what Cosky needed to do to obtain an independent test for alcohol concentration.

When Cosky finished using the telephone, Donahue asked if Cosky would submit to a breath test. Cosky requested a blood test, but Donahue said he was offering only a breath test. Cosky then requested a urine test, and Donahue repeated that he was offering only a breath test. Cosky agreed to submit to a breath test after telling Donahue that he wanted both a breath test and a blood test. Donahue told Cosky that he would have to arrange for a blood test on his own.

After submitting to a breath test, Cosky was allowed to use the telephone again. He called his girlfriend. He did not ask her to help him arrange for additional testing or to contact an attorney for that purpose. Although Cosky claims that he was rushed while talking to his girlfriend, his testimony indicates that he did not intend to ask her to help him arrange for additional testing, and there is no evidence that he asked to make another telephone call at that time.

Cosky was then transported from the Mound police station to the Hennepin County Detention Center. He arrived at the detention center at about 4:30 a.m. and, soon after, told detention deputy Martin Pansch that he wanted another test. Pansch provided Cosky with a telephone and told him that he would have to call someone and arrange for a test himself. Cosky said he did not know whom to call, so Pansch brought him to a holding cell and told him to let a deputy know if he thought of someone to call.

A short time later, Cosky notified a deputy that he wanted to make a call. Pansch testified that he brought Cosky out of the holding cell and provided him with a telephone and a telephone book to look up the number for Park Nicollet Clinic. Cosky called the clinic and was told that the clinic would not send anyone to the jail to perform a blood test.

Cosky then asked to call his attorney and was allowed to do so. Cosky reached his attorney's answering service, which refused to give Cosky the attorney's home telephone number but offered to contact the attorney and give him a message. Cosky asked Pansch for a telephone number where his attorney could contact him. Pansch replied that inmates were not allowed to receive telephone calls at the jail.

Pansch asked Cosky if he wanted to call anyone else. Cosky did not know anyone else to call, so he said no. Pansch brought Cosky back to a holding cell. Cosky did not make any further requests to use the telephone, and he did not tell anyone that he wanted to continue his efforts to obtain additional testing.

## ISSUE

Did the district court err by concluding that Cosky was not denied his right to additional testing under Minn.Stat. § 169.123?

## ANALYSIS

■ Cosky is not challenging any of the district court's findings of fact. When the facts are undisputed, whether the police

prevented or denied an independent blood test is a question of law. *Haveri v. Commissioner of Pub. Safety*, 552 N.W.2d 762, 765 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

Minn.Stat. § 169.123, subd. 3 (1998), provides:

> (a) * * * The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state.
>
> (b) The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

■ Citing *Theel v. Commissioner of Pub. Safety*, 447 N.W.2d 472 (Minn.App. 1989), *review denied* (Minn. Jan. 8, 1990) in which this court held that a driver's statutory right to obtain an additional test was prevented or denied, Cosky contends that his right to obtain an additional test was denied because he was not allowed to receive telephone calls at the jail. In *Theel*, after the driver specifically asked to call an attorney to help him obtain an additional test, a police officer told him, "Forget it. They're all sleeping," and did not allow the driver access to a telephone. 447 N.W.2d at 473.

■ Here, in contrast, all of Cosky's requests to use a telephone were granted. After Cosky attempted to contact his attorney a second time, Pansch asked if Cosky wanted to call anyone else. Cosky said no and made no further requests to use the telephone. In *Haveri*, this court stated:

> In determining whether an additional test has been prevented or denied, we must draw a distinction between an officer's *failing to assist* and an officer's *hampering* an attempt to obtain such a test.

552 N.W.2d at 765 (citing *Theel*, 447 N.W.2d at 474).

> The only obligation an officer has in assisting the defendant in obtaining an additional test is to allow defendant use of a phone. The officer is not required to talk to a doctor on the phone to arrange the test. Nor does the officer have a duty to ask whether the arrestee wishes to use the phone to arrange an additional test.

*Id.* (citations omitted). An officer is not required to assist a driver by furnishing supplies or transportation to facilitate an additional test. *Theel*, 447 N.W.2d at 474. An officer is not required to instruct a driver on how to obtain an additional test. *See Ruffenach v. Commissioner of Pub. Safety*, 528 N.W.2d 254, 256–57 (Minn.App. 1995) (the only information that a police officer is required to provide to a driver is the statutorily mandated implied consent advisory).

We conclude that Cosky's right to additional testing was vindicated even though he was not allowed to receive incoming phone calls while he was in jail. Permitting Cosky to receive incoming telephone calls might have made it easier for him to arrange an additional test. But there is no basis for us to conclude that not permitting incoming calls prevented Cosky from arranging a test. Cosky could have used outgoing calls to arrange a test, as he attempted to do when he called the Park Nicollet Clinic. Or he could have left instructions for his attorney to arrange a test. By following standard policy and not permitting incoming calls, the officers failed to assist Cosky, but they did not hamper his attempt to obtain an additional test.

## DECISION

Cosky's right to obtain an additional chemical test under Minn.Stat. § 169.123, subd. 3, was vindicated when he was allowed to use a telephone to make the calls he wished to make, even though he could not receive calls on the telephone.

**Affirmed.**

AMUNDSON, Judge (dissenting).

Because I believe that allowing Cosky to use the telephone to make outgoing phone calls did not fully vindicate his Sixth Amendment right to counsel and his statutory right to additional testing, I respectfully dissent. After the Park Nicollet Clinic informed Cosky that it would not send anyone to the jail to perform a blood test, Cosky sought counsel's advice on how to obtain an additional test. In an implied consent proceeding, the driver's Sixth Amendment right to counsel attaches when deciding whether to submit to testing and continues through each critical stage, including the right to obtain additional testing. *Dufloth v. Commissioner of Pub. Safety*, 492 N.W.2d 277, 279 (Minn. App.1992), *review denied* (Minn. Dec. 15, 1992). The limited right to counsel is the driver's main protection, and courts will ensure that it is protected. *Davis v. Commissioner of Pub. Safety*, 509 N.W.2d 380, 391–92 (Minn.App.1993), *aff'd*, 517 N.W.2d 901 (Minn.1994). As the dissent noted in *Dufloth*, a driver "may well need an attorney to carry out the right to a second test." *Dufloth*, 492 N.W.2d at 280 (Parker, J., dissenting).

Allowing Cosky to make a telephone call to his attorney was meaningless because Cosky could only reach the attorney's answering service. The police officer's refusal to allow Cosky to receive a call back from his attorney was equivalent to a police officer allowing a driver to call his attorney, but then putting his hands over the driver's ears to prevent the driver from hearing the attorney's advice. The majority's holding ignores the reality that most DWI arrests occur during the late night and early morning hours, a time when attorneys typically can be reached only through an answering service. By refusing to make a reasonable accommodation to allow Cosky to receive a phone call from his attorney, police prevented him from exercising his constitutional right to counsel and his statutory right to additional testing. I would reverse.