*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0013**

Quentin Keith Orsten, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed November 9, 2015
Affirmed
Worke, Judge**

Kandiyohi County District Court
File Nos. 34-CV-14-458, 34-CR-14-736

Robert D. Stoneburner, Paynesville, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter D. Magnuson, Assistant Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, Jeanine M. Putnam, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant Quentin Keith Orsten challenges the district court's order sustaining the revocation of his driver's license, arguing that the district court erred in concluding that sufficient probable cause existed to arrest appellant for DWI and that the arresting officer

did not impermissibly prevent him from exercising his right to an additional chemical test. We affirm.

## D E C I S I O N

### *Preliminary breath test*

Respondent Commissioner of Public Safety revoked appellant Quentin Keith Orsten's driver's license following his arrest for DWI and breath-test indicating an alcohol concentration of 0.11. The district court sustained the revocation following an implied-consent hearing.

Orsten first argues that he was not lawfully arrested because the officer "lacked probable cause" to administer a preliminary breath test (PBT) after Orsten successfully completed one of three standard field sobriety tests. "A court's determination of probable cause is both a question of fact and of law. Once the facts have been found the court must apply the law to determine if probable cause exists." *Clow v. Comm'r of Pub. Safety*, 362 N.W.2d 360, 363 (Minn. App. 1985).

Preliminarily, we note that the district court analyzed Orsten's argument as a challenge to the officer's reasonable, articulable suspicion that Orsten was impaired before requiring him to submit to a PBT. In his brief on appeal, however, Orsten argues that probable cause is necessary before a driver may be required to submit to a PBT. Orsten is mistaken. An officer may require a driver to submit to a PBT when the officer "has reason to believe" the driver is impaired. *See* Minn. Stat. § 169A.41, subd. 1 (2014); *see also State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981) (stating standard for administering PBT is articulable suspicion); *State v. Vievering*, 383

2

N.W.2d 729, 730 (Minn. App. 1986) ("An officer need not possess probable cause to believe that a DWI violation has occurred in order to administer a preliminary breath test."), *review denied* (Minn. May 16, 1986).

Orsten's PBT result revealed an alcohol concentration of 0.105. This provided a basis for his arrest and the requirement that he submit to a chemical test under the implied consent law. *See* Minn. Stat. § 169A.51, subds. 1(a), 1(b)(3), 1(b)(4) (2014) (providing for chemical testing under implied consent law where officer has probable cause to believe person was driving motor vehicle and refuses to submit to PBT or submits and result is over 0.08). Because the PBT result was relied on as a basis for his arrest, we consider the district court's determination that the officer had reasonable suspicion of impairment to request a PBT.

Orsten argues that his stop for speeding, instead of for erratic driving, does not support the officer's suspicion of impairment.[1] Orsten's argument fails because the officer may make the impairment determination "from the manner in which a person is driving . . . or *acting* upon departure from a motor vehicle." Minn. Stat. § 169A.41, subd. 1 (emphasis added). Because the statute permits the officer to require a driver to submit to a PBT based on the driver's actions after the driver has exited the vehicle, the lack of any indication of impaired driving prior to the stop is irrelevant.

---

[1] In his brief and at oral argument, Orsten implies that the officer's inexperience—18 months as a patrol officer—made him incapable of properly evaluating the totality of the circumstances, including administering and interpreting field-sobriety tests and the PBT. The district court credited the officer's testimony concerning the circumstances surrounding the stop and arrest, and we defer to those determinations. *See State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003) (deferring to district court's determination regarding reasonable suspicion), *review denied* (Minn. July 15, 2003).

The district court concluded that the officer had reasonable suspicion to require Orsten to submit to a PBT based on Orsten's physical characteristics, his admission to consuming alcohol, and his failure to complete two field sobriety tests. We look at the totality of the circumstances to determine whether reasonable, articulable suspicion existed. *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998). This assessment "include[s] the officer's general knowledge and experience, the officer's personal observations . . ., the nature of the offense suspected, the time [of day] . . . and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). The totality of the circumstances here supports the officer's reason to believe Orsten was impaired.

The officer stopped Orsten's vehicle at approximately 12:31 a.m. for traveling 43 miles per hour in a 30-mile-an-hour zone. *See State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998) (factoring the time of day into the probable-cause determination and recognizing that drinking often occurs later at night). The officer approached the vehicle and noticed that Orsten, the driver and sole occupant, had "bloodshot, watery eyes that were red around the irises," and he "detected an odor of an alcoholic beverage coming from inside" the vehicle and on Orsten's person after he exited the vehicle to perform field sobriety tests. *See State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (stating that two indicia of intoxication—the odor of alcohol emanating from the driver and the driver's bloodshot and watery eyes—reasonably justified intrusions in the form of field sobriety testing and a PBT); *Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 911 (Minn. App. 1986) (stating that a driver's bloodshot and watery eyes and an odor of

4

alcohol provided reasonable suspicion of DWI and a legal basis for a PBT). Orsten admitted to drinking two beers that night. "An admission of drinking, coupled with other indicators of intoxication, is sufficient for probable cause to arrest." *State v. Laducer*, 676 N.W.2d 693, 698 (Minn. App. 2004). Finally, Orsten failed the horizontal-gaze-nystagmus test and the walk-and-turn test. After Orsten failed these two field-sobriety tests, the officer requested that Orsten provide a sample of breath for the PBT, which he also failed. The totality of the circumstances supports the conclusion that the officer formed a reasonable, articulable suspicion that Orsten was driving while impaired, which justified the officer's request that Orsten provide a sample of breath for the PBT.[2]

Orsten also argues that "the officer did not have grounds for administering a PBT test," because he passed the one-legged-stand test and the officer did not observe other indicia of impairment, such as slurred speech or fumbling attempts to locate his driver's license. There is no requirement that a driver demonstrate every possible indicia of impairment before being required to submit to a PBT. *Cf. Vievering*, 383 N.W.2d at 730 (concluding officer had sufficient reason to request PBT based on speeding violation, odor of alcohol, and open beer cans on vehicle's floor). The district court did not err in determining that the officer was authorized to administer the PBT based on the totality of

---

[2] The commissioner alternatively argues that there was probable cause to arrest Orsten for DWI independent of the PBT result. *See also Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn. App. 1983) (stating officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence of alcohol). The district court also concluded that there was probable cause to arrest Orsten, but Orsten does not appear to challenge that ruling. Because we conclude that there was reasonable suspicion for the officer to require Orsten to submit to a PBT, we do not consider this alternative argument.

the circumstances and lawfully arrested Orsten for DWI after the PBT indicated an alcohol concentration of 0.08 or more. *See* Minn. Stat. §§ 169A.41, subd. 2; .51, subd. 1(b)(4).

*Additional test*

Orsten next argues that law enforcement failed to facilitate his request for an additional, independent chemical test. Whether an arresting officer unlawfully prevented or denied a driver the right to obtain an additional chemical test is a question of fact and law. *Haveri v. Comm'r of Pub. Safety*, 552 N.W.2d 762, 765 (Minn. App. 1996), *review denied* (Minn. Oct. 29, 1996). "The district court's findings of fact must be sustained unless clearly erroneous, but this court reviews de novo whether . . . the driver's right to an independent test was prevented or denied." *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 333 (Minn. App. 2009).

"Any person who drives . . . a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a) (2014). The officer requiring the test has the authority to choose whether to conduct a blood, breath, or urine test. *Id.*, subd. 3 (2014). A person has the right to have an additional chemical test after the person submits to the state's test. *Id.*, subd. 7(b) (2014). "The failure or inability to obtain an additional test . . . does not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer." *Id.*

6

Although the statute provides for an additional test, the police officer has no duty to advise a driver of the right to an additional test. *Schulz*, 760 N.W.2d at 335 n.1 ("An attorney, not a police officer, is the appropriate source of legal advice regarding the alternative choices at the chemical testing stage of DWI proceedings.") (quotations omitted). The officer's only obligation is to allow the use of a telephone. *Poeschel v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, 2015 WL 6442564, at *4 (Minn. App. Oct. 26, 2015) (declining to create affirmative duty requiring officer to offer posttest use of telephone even though driver did not ask to use the phone). It is the driver's responsibility to clarify his intent to have a second test. *See Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380, 387 (Minn. App. 1993), *aff'd*, 517 N.W.2d 901 (Minn. 1994). "In determining whether an additional test has been prevented or denied, we must draw a distinction between an officer's failing to assist and an officer's hampering an attempt to obtain such a test." *Haveri*, 552 N.W.2d at 765.

Here, on the way to the jail after his arrest, Orsten asked if he could take a blood test. The officer told him that he would be offering him a breath test. At the jail, the officer read the implied-consent advisory and told Orsten he had the right to consult an attorney, but Orsten did not want to call an attorney and agreed to take a breath test. After the breath test, Orsten asked, "I suppose since I already did a breathalyzer, I can't do a blood sample?" The officer replied: "[N]o . . . we were good." Orsten replied, "Okay, thanks." A couple minutes later, Orsten asked, "So I can't have . . . a blood sample?" The officer replied, "No." And Orsten responded, "Gotcha." The officer explained, "You already took . . . the breath [test], so we'll stick to that. And [the results]

7

would be the same anyway." At the implied-consent hearing, the officer testified that Orsten never asked for an additional test, and that he interpreted Orsten's requests for a blood test as requests "for a redo of the breathalyzer test." Because the officer believed that Orsten was requesting another test administered by law enforcement, he told Orsten "we were good" to indicate that he had gathered the necessary evidence and would not need a blood test.

The district court credited the officer's testimony, concluding that the officer did not hamper Orsten's ability to obtain an additional chemical test. We agree. At no time did Orsten clarify his intent to have an additional test. *See Davis*, 509 N.W.2d at 387. Nor did he clearly "assert his right to an additional chemical test." *See Schulz*, 760 N.W.2d at 335. The officer was under no duty to interpret Orsten's request "for any test as a request for a test in addition to that which is offered by the peace officer." *See id*. Even if Orsten asserted his right to an additional test, the officer did not hamper Orsten's efforts to secure additional testing. Orsten had several opportunities where he could have arranged for an additional test. On the way to jail, the officer told Orsten he could use his cell phone. At the jail, the officer allowed Orsten to use a phone, but Orsten chose not to call an attorney. *See Poeschel*, 2015 WL 6442564, at *4. And Orsten was released after a booking process that lasted approximately one-half hour. *See id.* at 334 (stating that an officer is not required to furnish supplies or transportation to facilitate an additional test, talk to a doctor to arrange an additional test, or ask a driver if he wishes to use the telephone to arrange an additional test). Based on the record before this court, the district

court did not err in concluding that the officer did not violate Orsten's right to an additional chemical test.

**Affirmed.**