*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0274**

Damon Dewitt Tackett, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed November 30, 2015
Affirmed
Connolly, Judge**

Carlton County District Court
File No. 09-CV-14-597

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, PLLC, Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter Magnuson, Elizabeth Oji, Rachel E. Bell, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges the district court order sustaining the revocation of his driver's license under Minnesota's implied-consent law, arguing that his statutory right to

an additional chemical test was not vindicated and that his constitutional rights under the Fourth Amendment were violated. We affirm.

## FACTS

On March 6, 2014, a Carlton County deputy initiated a traffic stop of appellant, Damon Dewitt Tackett. The deputy developed probable cause and arrested appellant for driving while impaired (DWI). Appellant was brought to the Sheriff's Office where the implied-consent advisory was read to him. Appellant stated that he understood the implied-consent advisory. Appellant's request to exercise his right to speak with an attorney was granted, and he spoke with an attorney over the phone for approximately 20 minutes. During the conversation with his attorney, appellant requested an independent chemical test, to which the deputy said "okay". After appellant concluded his conversation with the attorney, the deputy asked appellant if he would submit to a breath test. Appellant responded "Because it's a crime, I have no choice. I'm required by law to end up being coerced into taking the test."

Another deputy administered the DataMaster DMT-G chemical analysis on appellant's breath and calculated a result of 0.10. Nothing in the record indicates either that appellant requested to use a telephone to arrange an independent chemical test after the testing process was completed or was provided further use of a telephone in order to arrange an independent chemical test. The district court judge concluded that appellant did not assert his right to an additional test after taking the DMT breath test.

At the district court hearing, both parties agreed that the only issues under consideration were "what [the district court has] commonly been calling the

2

McNeely/Brooks issue and the independent test issue." All other issues were waived. The district court ruled that it was the duty of the appellant's attorney, not the deputies to explain the extent and scope of an additional test while the driver is in custody. The district court explained that, because appellant did not assert his right to an additional test after taking the DMT breath test, the deputy did not prevent or deny appellant an additional test.

Additionally, the district court ruled that the deputy had probable cause to suspect appellant of DWI, read appellant the implied-consent advisory which clearly expressed that appellant had a choice to submit to testing, and gave appellant the opportunity to speak to an attorney for approximately 20 minutes prior to submitting to testing. The district court also found that no moral or physical compulsion was used. Based on the totality of the circumstances, the district court found that appellant freely and voluntarily consented to the test.

This appeal follows.

## D E C I S I O N

## I.

Whether an officer unlawfully prevented or denied an additional test involves both questions of law and questions of fact. *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 333 (Minn. App. 2009). "The district court's findings of fact must be sustained unless clearly erroneous, but this court reviews de novo whether, as a matter of law, the driver's right to an independent test was [violated]." *Id.*

3

"In determining whether an additional test has been prevented or denied, we must draw a distinction between an officer's failing to assist and an officer's hampering an attempt to obtain such a test." *Haveri v. Comm'r of Pub. Safety*, 552 N.W.2d 762, 765 (Minn. App. 1996) (emphasis omitted), *review denied* (Minn. Oct. 29, 1996). An officer must allow an additional test to be administered, but "need not act affirmatively to facilitate the test." *Id.* "The only obligation an officer has in assisting the defendant in obtaining an additional test is to allow defendant use of a phone." *Frost v. Comm'r of Pub. Safety*, 348 N.W.2d 803, 804 (Minn. App. 1984). The officer is not required to arrange an opportunity for a driver to obtain additional testing. *Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 912 (Minn. App. 1986). Moreover, "[i]t is the duty of attorneys, not police officers, to explain the extent and scope of the right to an additional test while the driver is in custody." *Duff v. Comm'r of Pub. Safety*, 560 N.W.2d 735, 738 (Minn. App. 1997) (quotation omitted). Advice and assistance regarding additional testing should come from an attorney. *See Hotchkiss v. Comm'r of Pub. Safety*, 553 N.W.2d 74, 78 (Minn. App. 1996) (noting that an attorney is the appropriate source of legal advice regarding additional testing).

Appellant contends that his pretest telephone access was insufficient to vindicate his right to an additional test, arguing that "[b]ecause a driver is only entitled to an additional test after first submitting to the test requested by law enforcement, it follows that vindication of the right to an additional test requires *post-test* access to a telephone." At oral argument, appellant's counsel suggested that the court should not "put the onus on the driver, who's drunk or impaired, according to the officer, to remember the advice

of the attorney at one point, and later, after being held in custody for some time . . . to then re-invoke the right to an independent test." We see no reason to place an affirmative obligation on the officer to remind appellant that he wanted to take an additional test, merely because appellant was drunk.

This court has recently addressed this argument in *Poeschel v. Comm'r of Pub. Safety*, ____ N.W.2d ____ 2015 WL 6442564 (Minn. App. 2015). In *Poeschel*, a case that is almost identical to the case at hand, the defendant was arrested for driving while impaired and was read the Minnesota implied-consent advisory. *Poeschel*, 2015 WL 6442564, at *1. While she was on the telephone with her attorney, she informed the officer that she wanted an additional test. She also asked if the officer had a warrant for chemical testing and stated that "[b]ecause I am being coerced, I will give you a test" and "I'll take the urine test because I am required to." *Id.* After Poeschel provided a urine sample, she did not repeat her earlier request for an additional test, and the police did not provide additional telephone usage for her to arrange an additional test. This court held that "[a]n officer does not violate a driver's statutory right to an additional chemical test under Minnesota's implied-consent law by not offering the driver use of a telephone after the state's test, where the driver does not request post[-]test access to a telephone." *Id.* That holding is dispositive. *Id.* Here, appellant failed to request posttest access to a telephone, and therefore the officer did not violate his statutory right to an additional chemical test under Minn. Stat. 169A.51, subd. 7(b) (2014). Requiring an officer to offer posttest use of a telephone in the absence of a request would mandate assistance that is not required under the law. *Poeschel*, 2015 WL 6442564, at *1. "This court . . . cannot

5

supply what the legislature either purposely omitted or inadvertently overlooked." *Tracy State Bank v. Tracy-Garvin Coop.*, 573 N.W.2d 393, 395 (Minn. App. 1998).

Appellant had the opportunity to consult with an attorney on the telephone regarding the implied-consent process and his statutory right to an additional test. He does not allege that the officer inappropriately limited his attorney consultation and he did not mention additional testing or ask to use a telephone after the state's test. Appellant's statutory right to an additional test was not violated.

**II.**

Appellant also contends that the revocation of his driver's license must be rescinded because law enforcement violated his constitutional rights when the deputy executed a warrantless search. The United States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). This guarantee of freedom from unreasonable searches and seizures establishes the right to privacy "as one of the unique values of our civilization," and "with few exceptions, stays the hands of the police unless they have a search warrant." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

It is not in dispute that officers did not obtain a warrant prior to performing a search of appellant. Appellant argues that the two exceptions to the warrant requirement

under the Fourth Amendment applied by the district court, (A) search incident to arrest, and (B) consent, are inapplicable in this case. We disagree.

## A.      Search Incident to Arrest

"A search incident to a lawful arrest is a well-recognized exception to the warrant requirement under the Fourth Amendment. . . . Under this exception, the police are authorized to conduct a full search of the person who has been lawfully arrested." *State v. Bernard*, 859 N.W.2d 762, 766-67 (Minn. 2015) (quotation and citation omitted). A warrantless breath test does not violate the Fourth Amendment when it is a search incident to a valid arrest. *Id.* at 767.

Appellant argues that, "with the sole exception of [*Bernard*], case law defining the search incident to arrest exception involves searches conducted contemporaneously— spatially and temporally—with the arrest." Appellant does not distinguish *Bernard* except to say that the majority opinion in *Bernard* is "unprecedented" and, as a matter of federal law, "the search incident to arrest exception does not apply here, and does not validate law enforcement's warrantless search."

"The district court, like [the court of appeals], is bound by supreme court precedent and the published opinions of the court of appeals." *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). This court is bound to follow *Bernard*. Like appellant, the defendant in *Bernard* was arrested for DWI test refusal with proper probable cause and, as in the current case, the defendant challenged the constitutionality of the test-refusal statute under the Fourth Amendment. *Bernard*, 859 N.W.2d at 764-65. "[A] warrantless breath test of Bernard would not have

7

violated the Fourth Amendment because it is a search incident to Bernard's valid arrest." *Id.* at 767.

As legal authority to dispute *Bernard*, appellant relies on six cases, none of which involved a breath test and implied consent and all of which were decided prior to *Bernard.* As such, we find that a valid search incident to arrest was conducted in this case.

### B.    Consent

The question of whether a consent search was voluntary and not the product of duress or coercion is a question of fact, which we review under the clearly erroneous standard. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47. Voluntariness is a question of fact, and it depends on the totality of the circumstances, including "[1]the nature of the encounter, [2] the kind of person the defendant is, and [3] what was said and how it was said." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

Appellant argues that the consent exception does not apply because he did not "freely and voluntarily consent." Appellant alleges that the commissioner was required to establish by a preponderance of the evidence that there was free and voluntary consent to the breath test, and failed to do so.

As to the nature of the encounter, "[a]n individual does not consent . . . simply by acquiescing to a claim of lawful authority." *Brooks*, 838 N.W.2d at 569 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788 (1968)). However, "[a] driver's

8

decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. The appellant in *Brooks* made essentially the same argument as appellant makes here. *Brooks* specifically considered the *Bumper* holding that submission to legal authority is not voluntary consent. "[T]he choice to submit or refuse to take a chemical test will not be an easy or pleasant one for a suspect to make, [but] the criminal process often requires suspects and defendants to make difficult choices." *Id.* at 571 (quotation marks omitted).

To determine that the appellant in *Brooks* had not been coerced based on the nature of the encounter, the court noted that: (1) Brooks was not confronted with repeated police questioning; (2) Brooks was not asked to consent after having spent days in police custody; (3) Brooks consulted counsel before agreeing to take the test; and (4) Brooks was read the implied-consent advisory which, the court found, makes clear that he had a choice of whether to submit to testing. *Id.* at 571-72. Similarly, appellant was not repeatedly questioned; there was no evidence presented that the deputies held appellant for more than a few hours, much less days, prior to requesting his consent to testing; he was given the opportunity and actually consulted with an attorney; and he was read the implied-consent advisory. The nature of the encounter indicates appellant gave voluntary consent to the search.

The second factor in the totality-of-the-circumstances is the kind of person appellant is. Neither appellant nor the commissioner provided any arguments regarding this factor and therefore, this factor is not applicable.

The third factor requires the court to look at what was said and how it was said. Appellant argues that the deputy's refusal to answer his question as to whether the deputy had a warrant and appellant's own statement that he was being coerced and forced to take the test show that consent was involuntary. As discussed *supra*, because the facts of this case are closely analogous to those in *Brooks*, the implied-consent statute as it applies to appellant is not coercive. As a result, appellant's mistake of law in believing the statute was coercive has no bearing on the totality of the circumstances to determine if the consent was voluntary. Appellant has not met his burden of showing that the district court's finding that consent was freely and voluntarily given based on the totality of the circumstances was clearly erroneous.

Because the police were not required to provide an additional opportunity for appellant to use the phone where he did not request posttest access to a telephone, and because there were two valid exceptions to the warrant requirement, we affirm the district court order sustaining the revocation of appellant's driver's license under Minnesota's implied-consent law.

**Affirmed.**