**David James WILLITS, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**A16-0248**

Court of Appeals of Minnesota.

Filed March 6, 2017

---

Robert M. Christensen, Robert M. Christensen, P.L.C., Minneapolis, Minnesota (for appellant).

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for respondent).

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and Rodenberg, Judge.

## OPINION

KIRK, Judge

Appellant challenges the revocation of his driver's license on the ground that his statutory right to an additional chemical test was violated when a sheriff's deputy gave him a county-issued medical-grade specimen cup to collect his urine sample. Because the deputy did not prevent or delay the administration of the additional chemical test requested by appellant, we affirm.

## FACTS

On March 1, 2015, Minnesota State Patrol Trooper Shaun Leshovsky arrested appellant David James Willits for driving while impaired. Trooper Leshovsky read the Minnesota Motor Vehicle Implied Consent Advisory to Willits, and Willits indicated that he understood the advisory. Trooper Leshovsky drove Willits to the Hennepin County Jail. At the jail, Willits stated that he wanted to talk to an attorney. Trooper Leshovsky provided Willits with a telephone and phone books, and Willits spoke with an attorney. Willits agreed to take a breath test. Around the time law enforcement administered the breath test, Willits told Trooper Leshovsky that he would like to take an independent test. At the implied-consent hearing, Trooper Leshovsky testified that he told Willits that jail staff "would coordinate an additional test to his liking."

Willits completed the breath test, which revealed an alcohol concentration of 0.11. Trooper Leshovsky took Willits to the booking area and informed jail staff that Willits had requested an additional chemical test. Willits made a second phone call to arrange for an additional test. Shortly thereafter, M.G., Willits's ex-wife, arrived at the jail, and jail staff escorted her to a room where she handed Willits a Tupperware container. Hennepin County Deputy Sheriff Chad Caldwell also provided Willits with a medical-grade sterile specimen cup for Willits to use to collect his urine. Willits testified that he intended to use the Tupperware container to collect his urine sample until Deputy Caldwell gave him the county-issued urine-specimen cup and said, "You can use this one instead, sir." Willits provided a urine sample in the county-issued specimen cup and gave the specimen cup containing his urine sample and the Tupperware container to M.G.

Respondent Minnesota Commissioner of Public Safety revoked Willits's driving privileges. Willits petitioned for judicial review of the Commissioner's revocation, arguing in part that law enforcement denied him his right to an additional chemical test. After an implied-consent hearing, the district court issued an order sustaining the revocation of Willits's driver's license. The district court concluded that there was no evidence that the county-issued specimen cup prevented an independent testing agency from analyzing Willits's urine sample in the same way that the Tupperware container would have allowed the analysis. It also concluded that Willits consented to the breath test.

This appeal follows.

## ISSUE

Did the district court err in finding that Willits's statutory right to an additional chemical test was not violated?

## ANALYSIS

Determining whether an officer prevented or denied a suspected drunk driver the right to obtain an additional chemical test involves both questions of

law and fact. *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 333 (Minn. App. 2009). This court reviews the district court's factual findings for clear error and "reviews de novo whether, as a matter of law, the driver's right to an independent test was prevented or denied." *Id.*

■ In answering the question of whether an officer prevented or denied an additional test, this court "must draw a distinction between an officer's failing to assist and an officer's hampering an attempt to obtain such a test." *Haveri v. Comm'r of Pub. Safety*, 552 N.W.2d 762, 765 (Minn. App. 1996) (emphasis omitted), *review denied* (Minn. Oct. 29, 1996). "Caselaw makes clear that officers must allow a sample to be collected and an additional test to be administered, but they need not act affirmatively to facilitate the test." *Id.* "The only obligation an officer has in assisting the [driver] in obtaining an additional test is to allow [the driver] use of a phone." *Frost v. Comm'r of Pub. Safety*, 348 N.W.2d 803, 804 (Minn. App. 1984). The officer is not required to furnish any supplies or transportation to the driver to facilitate an additional test. *State v. Hatlestad*, 347 N.W.2d 843, 845 (Minn. App. 1984). Minn. Stat. § 169A.51, subd. 7(b) (2014), provides:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person does not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

The statute "is nothing more than an *affirmation* of the right of persons *being held in custody* to have an independent test administered while being held." *Frost*, 348 N.W.2d at 805 (citing Minn. Stat. § 169.123, subd. 3 (1982), an earlier version of Minn. Stat. § 169A.51, subd. 7(b)).

■ Relying on an unpublished opinion from this court, Willits argues that his statutory right to additional testing was violated because Deputy Caldwell denied him the right to use a container of his choosing to collect his urine sample. Willits argues that Deputy Caldwell interfered with this right when he went beyond his limited duty to provide Willits with a phone by giving him a government-issued specimen cup. This unpublished case is not binding on this court and is not relevant. In that case, we held that the defendant was denied his statutory right to an additional chemical test because jail policy prevented his wife from bringing a plastic receptacle into the jail to collect the defendant's urine for independent testing. But Minn. Stat. § 169A.51, subd. 7(b), does not give a person the right to use a container of the person's choosing to collect a urine sample. And unlike the unpublished case, law enforcement assisted Willits in vindicating his right to an additional test. Jail staff provided Willits with a phone to make arrangements for the test, and no one prevented M.G. from meeting Willits at the jail and giving him the Tupperware container. And no one prevented Willits from giving M.G. the specimen cup containing his urine.

Law enforcement's actions did not hamper or hinder Willits's ability or rights to obtain an additional test. That Deputy Caldwell went beyond providing Willits access to a phone cannot be construed as infringing upon Willits's right to an addi-

tional test. If anything, the deputy's actions benefitted Willits by providing him with a medical-grade specimen cup specifically designed to collect urine.

Willits argues that the deputy interfered with his right to an additional test by ordering him to use the specimen cup. But the district court found no evidence of coercion, and Willits is unable to link Deputy Caldwell's offer of the specimen cup to a delay or denial of his right to an additional test. The record supports the district court's finding that Willits had access to both the specimen cup and the Tupperware container when he provided a urine sample and that he decided to use the specimen cup. Even if this were not so, Willits does not allege, and no evidence suggests, that there was anything wrong with the specimen cup provided by the deputy.

█ Willits also asserts that any additional assistance by law enforcement in arranging for additional testing, beyond the limited duties required by law, opens the door to possible evidence tampering. But Willits does not allege tampering, and no evidence in the record would support the allegation. "[A]rguing that something *might* have occurred is mere speculation and insufficient [to rebut chemical testing results] unless supported by additional evidence. [An appellate] court requires that the driver establish a relationship between the alleged error and the validity of the results." *Kramer v. Comm'r of Pub. Safety*, 706 N.W.2d 231, 237 (Minn. App. 2005) (citation omitted). Likewise, there is no evidence in the record that independent testing revealed a different alcohol concentration than the breath test. Because Willits's statutory right to an additional test was not violated, the district court properly sustained the revocation of his driver's license.[1]

## DECISION

Because Minn. Stat. § 169A.51, subd. 7(b), does not give a suspected drunk driver the right to use a container of his or her choosing to collect a urine sample, and because law enforcement did not prevent or delay the administration of additional chemical testing in this case, the district court properly sustained the revocation of Willits's driver's license.

**Affirmed.**

---

1. At oral argument, Willits waived his Fourth Amendment challenge to his breath-test result.